Filed 12/15/15; part. pub. order 1/14/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HENRY CASTILLO et al., | B258432 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC409169) |
| v. | |
| DHL EXPRESS (USA) et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert L. Hess, Judge. Affirmed.

Pine & Pine, Norman Pine and Scott Tillett; Makarem & Associates, Ronald W. Makarem and Jean-Paul Le Clercq, for Plaintiffs and Appellants.

Fisher & Phillips, Christopher J. Boman and Shaun J. Voigt, for Defendant and Respondent, DHL Express (USA), Inc.; CE Smith Law Firm and Clifton E. Smith, for Defendant and Respondent, KWK Trucking, Inc.

**INTRODUCTION**

Henry Castillo, individually and on behalf of others similarly situated, appeals the dismissal of his wage-and-hour class action and individual complaint against KWK Trucking, Inc. (KWK) and DHL Express (DHL) (collectively, defendants) for failure to prosecute within the five-year period provided by Code of Civil Procedure section 583.310.[1] Castillo contends the parties' participation in private mediation during the final months of the five-year period triggered section 1775.7, subdivision (b), which contains an automatic tolling provision. Alternatively, Castillo argues the trial court should have exercised its discretion to exclude from its calculation of the five-year period the time during which the parties pursued private mediation or the time during which DHL attempted to decertify the class. We conclude that section 1775.7 only applies to mediation conducted in a court-annexed alternative dispute resolution program. We also conclude that Castillo did not show it was impossible, impracticable or futile to bring his case to trial within five years. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.     Complaint and Class Certification**

Castillo filed his class action complaint on March 6, 2009. Castillo alleged he was a truck driver employed jointly by KWK and DHL and asserted claims for failure to pay regular and overtime wages, failure to provide meal and rest periods, failure to furnish accurate wage statements, failure to pay wages upon termination or discharge, and unfair competition in violation of Business and Professions Code section 17200. Castillo filed class certification motions as to both defendants approximately one year later. On April 12, 2010, the court granted Castillo's request to file a first amended complaint and also set a hearing date for the class certification motions. The court heard the motions and took them under submission on August 20, 2010.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise specified.

On September 29, 2010, the court issued a minute order regarding the motions for class certification, stating that Castillo had not yet made an adequate showing regarding the class representatives. The court ordered both sides to produce additional evidence relating to class certification and set the matter for a further hearing to take place on November 9, 2010. The record materials provided by the parties do not disclose the fate of the first class certification motions. However, Castillo subsequently filed a second amended complaint and the court ordered Castillo to submit new class certification motions by March 19, 2011, more than two years after the filing of the original complaint. On June 20, 2011, the court heard the class certification motions and granted them in part, certifying one class of drivers with four subclasses relating to wage statements, overtime, split-shift and termination payment claims. The parties continued to litigate class certification issues through the end of 2011, at which time the court modified the certification order by removing the split-shift subclass.

### 2. Six Months Prior to Dismissal

At a regularly scheduled status conference on September 30, 2013, the parties advised the court that they intended to pursue private mediation. The court set a post-mediation status conference and trial setting conference for January 6, 2014. The court also issued a case management order referring the case to mediation with a private neutral, per the parties' agreement. The case management order advised the parties they were within six months of trial.

DHL filed a motion to decertify the class in early November 2013, based mainly on its contention that, as a matter of law, it was not an "employer" of plaintiffs under California law. The court denied the motion on December 17, 2013. The next day, Castillo filed a stipulation signed by all parties agreeing to continue the post-mediation and trial setting conference until late February 2014. The court rescheduled the conference for February 28, 2014. Evidently, the mediation was unsuccessful. At the conference on February 28, 2014, the court set a trial date of June 17, 2014.

On April 4, 2014, or five years and one month after Castillo filed his original complaint, both defendants moved to dismiss the complaint due to Castillo's failure to

3

bring the case to trial within five years. On May 6, 2014, after receiving written opposition from Castillo and hearing lengthy argument by counsel, the court granted the motions and dismissed the action for failure to prosecute within five years. Castillo timely appealed.

## CONTENTIONS

Castillo contends the five-year period to bring his action to trial under section 583.310 was tolled by operation of law (§ 1775.7, subd. (b)) for 151 days, beginning on September 30, 2013 (the day the parties advised the court they agreed to pursue private mediation) and ending on February 28, 2014 (the day the parties advised the court they had not settled their dispute). Alternatively, Castillo contends the trial court abused its discretion by refusing to exclude from its calculation of the five-year period either the 116 days during which DHL attempted to decertify the class or the 151 days during which the parties pursued private mediation. (§ 583.340.)

## DISCUSSION

### 1. A Plaintiff Must Generally Bring a Civil Action to Trial Within Five Years

"An action shall be brought to trial within five years after the action is commenced against the defendant." (§ 583.310.) Subject to certain statutory exceptions, dismissal is mandatory if the action is not brought to trial within the five-year period. (§ 583.360.) As it is undisputed that Castillo did not bring his action to trial within the five years after he filed his original complaint, we consider whether any circumstance existed in this case which would extend the five-year time period.

We independently review legal questions regarding the construction and application of a statute. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529; *Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694 (*Dowling*).) Where, as here, the plaintiff contends it was impossible, impracticable or futile to bring the action to trial within the five-year period under section 583.340, subdivision (c), we review the trial court's ruling on that issue for an abuse of discretion. (*Bruns v.*

4

*E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731 (*Bruns*); *Dowling, supra*, 208 Cal.App.4th at p. 694.)

### 2. The Parties' Participation in Private Mediation Did Not Automatically Toll the Five-year Period

#### A. Statutory framework

"In 1993, the Legislature enacted the civil action mediation program (§ 1775 et seq.), which allows courts to order cases into mediation as an alternative to judicial arbitration. (§§ 1775.2, 1775.3, subd. (a), 1775.4.)" (*Jeld-Wen, Inc. v. Superior Court* (2007) 146 Cal.App.4th 536, 540 (*Jeld-Wen*).) If a court adopts a civil action mediation program, it may order to mediation any case in which judicial arbitration is required under section 1141.11, whether or not the action includes a prayer for equitable relief. (§§ 1775.3, 1141.18, subd. (b); Cal. Rules of Court, rule 3.891(a)(1).[2])

More particularly, rule 3.891(a)(1) provides that the superior court may submit to mediation any case with an amount in controversy under $50,000, after making a determination of the amount in controversy using the procedure set forth in section 1141.16, and after considering whether the parties are amenable to mediation.[3]

---

[2]     All further rule references are to the California Rules of Court.

[3]     The full text of rule 3.891 reads: "(a) Actions that may be submitted to mediation [¶] The following actions may be submitted to mediation under these provisions: [¶] (1) *By court order* [¶] Any action in which the amount in controversy, independent of the merits of liability, defenses, or comparative negligence, does not exceed $50,000 for each plaintiff. The court must determine the amount in controversy under Code of Civil Procedure section 1775.5. Determinations to send a case to mediation must be made by the court after consideration of the expressed views of the parties on the amenability of the case to mediation. The court must not require the parties or their counsel to personally appear in court for a conference held solely to determine whether to send their case to mediation. [¶] (2) *By stipulation* [¶] Any other action, regardless of the amount of controversy, in which all parties stipulate to such mediation. The stipulation must be filed not later than 90 days before trial unless the court permits a later time. [¶] (b) Case-by-case determination [¶] Amenability of a particular action for mediation must be determined on a case-by-case basis, rather than categorically."

(Rule 3.891(a)(1); § 1775.5.)  In addition, subdivision (a)(2) of that rule provides that any action, regardless of the amount of controversy, may be submitted to mediation if all parties so stipulate.  (Rule 3.891(a)(2).)  In that event, the parties must file a stipulation with the court not less than 90 days before trial.  (Rule 3.891(a)(2).)

As part of the civil action mediation program, the Legislature provided that participation in a court-sponsored mediation program may extend the five-year time period during which a plaintiff must bring his case to trial under section 583.310.  Specifically, section 1775.7, subdivision (b), provides:  "If an action is or remains submitted to mediation pursuant to this title more than four years and six months after the plaintiff has filed the action, then the time beginning on the date four years and six months after the plaintiff has filed the action and ending on the date on which a statement of nonagreement is filed pursuant to Section 1775.9 shall not be included in computing the five-year period specified in Section 583.310."  (§ 1775.7, subd. (b).)

In this case, the parties engaged in private mediation during December 2013 and February 2014, dates which fall within the final six months of the five-year time period to bring this action to trial under section 583.310.  The issue before us is whether this action was "submitted to mediation" within the meaning of section 1775.7, subdivision (b), thereby triggering that section's automatic tolling provision.

### B. This Case Was Not Submitted to Mediation Under Rule 3.891(a)

Castillo contends that either the court ordered the parties to mediation under rule 3.891(a)(1) or the parties stipulated to mediation under rule 3.891(a)(2).  Under either scenario, Castillo urges, this action was "submitted to mediation" within the meaning of section 1775.7.  We disagree.

### 1. The Trial Court Did Not Order the Parties to Mediate Their Dispute

We reject Castillo's contention that the trial court ordered the parties to pursue mediation within the meaning of rule 3.891(a)(1).  Rather, the case management order dated September 30, 2013 reflects that the parties agreed to pursue private mediation at

6

their own expense. Specifically, the court used a standard case management order form and checked the boxes indicating the case was "referred" (not "ordered") to mediation with a "private neutral" (not with "court services"), then added the handwritten notation: "parties agreement." The minute order from that date also reflects that "[c]ounsel have agreed to private mediation."

The court's own statements confirm this point. At the hearing on the defendants' motion to dismiss, the court stated it had not ordered the case to mediation, but rather referred the case to mediation pursuant to the parties' agreement as reflected in the case management order. The court also observed, during that hearing, that the Los Angeles Superior Court's mediation program was no longer operating on September 30, 2013 and it was therefore impossible for the court to order the parties to the court's mediation program at that time. As the court recognized, the court did not have the authority to order the parties to participate in private mediation at their own expense. (See *Jeld-Wen, supra,* 146 Cal.App.4th at p. 543 ["We conclude that a case management conference order requiring that parties in complex cases attend and pay for mediation is not authorized by [section 1775 et seq.] and is contrary to the voluntary nature of mediation."].)

In any event, section 1775.5 provides that a court may only order an action to mediation after it determines the amount in controversy. (§ 1775.5 [court shall not order a case into mediation where the amount in controversy exceeds $50,000]; see also § 1775.3, subd. (a) [mediation may only be ordered in cases in which arbitration is required under section 1141.11]; § 1141.11 [requiring judicial arbitration in all civil cases in which the amount in controversy is less than $50,000].) The court stated that it made no determination of the amount in controversy in this case because it understood it had no authority to order the case to mediation.

Nonetheless, Castillo insists the court ordered the parties to mediation. He asserts that the minute order, which states "Counsel have agreed to private mediation; *the Court so orders,*" constitutes such an order. At a minimum, Castillo contends, the minute order and the case management order conflict. He argues we must resolve the

7

conflict between the two orders in a manner that preserves, rather than extinguishes, his right to obtain a trial on the merits because he relied to his detriment on the court's minute order. We reject both arguments because we see no ambiguity in or conflict between the court's orders in this case. The minute order, which states "the Court so orders," plainly refers to the court's case management order. That order unambiguously states that the court referred the case to private mediation pursuant to the parties' agreement. Further, we defer to the court's own comments, on the record, confirming that the court did not order the parties to pursue mediation but rather referred the case to mediation in response to the parties' mutual agreement to pursue private mediation.

Finally, Castillo argues that the parties believed they had been ordered to mediation. Mainly, he asserts that the parties signed a stipulation to continue the post-mediation status conference which stated, "on September 30, 2013, the Parties attended a case management conference where *the Court ordered the Parties to attend mediation* and set a Post-Mediation Status Conference for January 6, 2014." Castillo contends that under Evidence Code section 622, the stipulation creates a conclusive presumption that the court ordered the parties to mediation. Evidence Code section 622 states: "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration." (Evid. Code, § 622.) Castillo assumes, without analysis or citation to legal authority, that a stipulation to continue a status conference is a "written instrument" within the meaning of Evidence Code section 622. We found no case directly supporting Castillo's contention; however, our own research revealed that the term "written instrument" may have different meanings depending on the context in which it is used. (See *Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616, 621-626 [reviewing cases applying varying interpretations of the term "written instrument"].) We conclude Castillo waived the issue by failing to provide authority or reasoned legal argument in support of his position. (*People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 502-503

8

[articulating rule that if party fails to support its argument with necessary citations to the record the argument will be deemed waived].)

### 2. The Parties Did Not Stipulate to Mediate Their Dispute Under Rule 3.891(a)(2)

Alternatively, Castillo argues that the parties stipulated to submit their case to mediation under rule 3.891(a)(2). Rule 3.891(a)(2) states that the parties' stipulation must be "filed" not later than 90 days before trial. Here, no stipulation appears in the appellate record, and Castillo appears to concede the parties never filed a stipulation to mediate their dispute. Neither the court's minute order of September 30, 2013, nor the parties' stipulation to continue the post-mediation status conference can reasonably be construed as a stipulation by the parties to submit their case to mediation, as Castillo contends.

Castillo's argument is further undermined by the fact that the parties did not follow the rules applicable to actions submitted to mediation under rule 3.891: they did not ask the court to extend the five-year period to bring the case to trial (rule 3.896(b)); they did not complete their mediation within 60 days of the reference to mediation (rule 3.896(c)); and they did not request an extension of the time to complete the mediation (rule 3.896(c)). Although Castillo dismisses these procedural deficiencies, we see them as further evidence that the court did not order and the parties did not stipulate to submit their case to mediation under rule 3.891.

### C. The Automatic Tolling Provision of Section 1775.7 Does Not Apply When Parties Engage In Private Mediation

Castillo contends that, even in the absence of compliance with rule 3.891(a), any agreement by the parties to pursue mediation triggers the automatic tolling provision of section 1775.7. That section tolls the five-year period to bring a case to trial if a case "is or remains submitted to mediation pursuant to this title." (§ 1775.7, subd. (b).) Castillo focuses only on the phrase "submitted to mediation," and argues in favor of an expansive interpretation of section 1775.7, such that *any* agreement by the parties to privately mediate a pending case effectively "submits" the case to mediation and

9

triggers the tolling provision. Castillo cites no case law applying section 1775.7's automatic tolling provision to a case in which the parties engaged in private mediation. We found only one published case, *Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, discussing the interplay between section 583.310 and section 1775.7. However, *Gonzalez* did not explicitly consider the point advanced by Castillo here, namely whether section 1775.7 tolls the five-year period while the parties pursue private mediation. Rather, the court considered whether the five-year period was tolled beginning on the date the trial court referred the case to mediation or, as the statute expressly provides, on the date four years and six months after the date the plaintiff filed her complaint. (*Id.* at p. 1129-1130.)

In the absence of case authority to guide us, we examine the statute to determine whether it is susceptible to the interpretation Castillo urges. We conclude it is not. Our analysis of the statute is guided by well-settled principles. " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" [Citations.] " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.]" (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32; *Isidora M. v. Silvino M.* (2015) 239 Cal.App.4th 11, 18.) We do not " 'examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and

purpose and to harmonize the various parts of the enactment. [Citation.]' " (*Bruns, supra,* 51 Cal.4th at p. 726.)

Section 1775.7, subdivision (b), expressly applies only to cases "submitted to mediation *pursuant to this title*," i.e., pursuant to Title 11.6 of the Code of Civil Procedure. (§ 1775.7, subd. (b), emphasis added.) Title 11.6, in turn, only governs mediation offered by courts as part of an alternative dispute resolution program: The Legislature declared that "[t]he purpose of this title [Title 11.6] is to encourage the use of *court-annexed* alternative dispute resolution methods in general, and mediation in particular." (§ 1775, subd. (f), emphasis added.) Similarly, section 1775.3, which defines the scope of Title 11.6, states that pending civil actions "may be submitted to mediation by the presiding judge or the judge designated under this title *as an alternative to judicial arbitration* pursuant to Chapter 2.5 (commencing with Section 1141.10) of Title 3." (§ 1775.3, subd. (a), emphasis added.) The fact that mediation is described as an alternative to judicial arbitration, which is itself overseen, managed and in many cases paid for by the courts, further reflects the Legislature's intent that Title 11.6 applies only to court-annexed mediation programs.

We also consider section 1775.7 with reference to the other provisions of Title 11.6 that regulate the mediation process. For example, the Legislature provided that the compensation for "court-appointed mediators" would be comparable to compensation for arbitrators under section 1141.18. (§ 1775.8, subd. (a).) Further, section 1775.8 provides that "[a]ll the administrative costs of mediation, including compensation of mediators, shall be paid in the same manner as for arbitration pursuant to Section 1141.28. Funds allocated for the payment of arbitrators under the judicial arbitration program shall be equally available for the payment of mediators under this title." (§ 1775.8, subd. (b).) These provisions, which direct the use of court budgetary funds, only make sense in the context of a court-annexed mediation program. Other provisions of Title 11.6 regulating the mediation process also could only apply to the extent the court has responsibility for and control over the mediation. (See, e.g., §§ 1775.6 [mediator selection], 1775.8 [mediator compensation], 1775.9 [statement of

11

nonagreement required].)  The Judicial Council rules implementing section 1775 et seq. support our interpretation, as they, too, only make sense as applied to a judicially-managed alternative dispute resolution program.  (See, e.g., rule 3.892 [requiring courts offering mediation program to maintain list of approved mediators]; rule 3.893 [giving court authority to select mediator if the parties cannot reach agreement within 15 days], rule 3.894 [setting forth requirements regarding attendance at mediation and advance disclosure of participants], rule 3.895 [requiring mediator to file a statement of agreement or nonagreement within 10 days of the completion of the mediation].)

We conclude, based upon the statute's clear and unambiguous language, that section 1775.7, subdivision (b), automatically tolls the five-year statutory time to prosecute an action only if the parties participate in a mediation conducted through a court-annexed mediation program.[4]  The legislative history of Title 11.6 supports our interpretation.  When the bill was first presented to the Senate, the Legislative Council described the key issue as follows:  "Should a three year pilot program be established in Los Angeles County, and in any other county electing to participate, which allows a trial court judge to order a case with an amount in controversy of under $50,000 to non-binding mediation?"  (California Bill Analysis, S.B. 401 Sen., 5/25/1993 [Senate Committee on Judiciary]; see also California Bill Analysis, S.B. 401 Sen., 6/15/1993 [Third Reading].)  As the bill moved to the Assembly, its provisions developed somewhat and the main purpose of the bill was described more particularly:  "Permits all courts in Los Angeles County, and in other courts electing to participate, to refer civil cases that would otherwise be subject to judicial arbitration to mediation instead." (California Bill Analysis, S.B. 401 Assem., 8/18/1993.)  Further, the bill provided that

---

[4]      We do not address Castillo's remaining arguments, which presume the statute is ambiguous.  (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 ["[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy"].)

the Judicial Council would subsequently report to the Legislature concerning the court-ordered alternative dispute resolution generally, and the pilot mediation program in particular. (*Id.*) When passed, the bill's focus remained on the use of court-ordered mediation as an alternative to judicial arbitration. (California Bill Analysis, S.B. 401 Sen., 9/09/1993.)

In sum, we conclude that the automatic tolling provision found in section 1175.7, subdivision (b), has no application where, as here, the parties choose to mediate their dispute privately.[5]

### 3. Castillo Failed to Show it was Impossible, Impracticable or Futile to Bring His Case to Trial at Any Point During the Five Years the Action Was Pending

Alternatively, Castillo contends the trial court erred by refusing to exclude under section 583.340, subdivision (c), either the 116 day period during which DHL attempted to decertify the class, or the 151 day period during which the parties attempted to mediate their dispute. The trial court did not abuse its discretion.

In computing the five-year time period within which a plaintiff must bring an action to trial under section 583.310, a court must exclude time during which "[b]ringing the action to trial . . . was impossible, impracticable, or futile." (§ 583.340, subd. (c).) Under section 583.340, subdivision (c), a court must determine what is impossible, impracticable, or futile " 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' " (*Bruns, supra*, 51 Cal.4th at p. 730.) However, a plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one

---

[5]      Nothing in this opinion should be construed to impact the parties' ability to stipulate to a stay in the proceedings while they engage in mediation. (See § 583.330.)

13

factor used to assess the impossibility, impracticability, or futility of bringing the action to trial.  (*Ibid.*)

Determining whether the subdivision (c) exception applies requires a fact-intensive inquiry and depends "on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles." (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438.)  Accordingly, the question of impossibility, impracticability, or futility is best resolved by the trial court, which "is in the most advantageous position to evaluate these diverse factual matters in the first instance." (*Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 555 (*Brunzell*).)  The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the court abused its discretion. (*Bruns, supra*, 51 Cal.4th at p. 731.)  We apply this deferential standard of review, bearing in mind that section 583.130 favors trial or other resolution on the merits over dismissal for failure to prosecute with reasonable diligence. (See Cal. Law Revision Com. com., 15C West's Ann. Code Civ. Proc. (2011 ed.) foll. § 583.340, p. 457 [stating that the tolling provisions of section 583.340 must be liberally construed consistent with the policy favoring trial on the merits].)

Castillo offers several justifications for his failure to bring his case to trial within five years.  First, he argues that the trial court's minute order of September 30, 2013 required him to participate in mediation and that it was impossible for him to bring the case to trial while the mediation was pending.  We reject this argument based on our conclusion, *ante*, that the trial court did not order the parties to mediate their dispute; rather, the parties agreed to pursue private mediation.  In any event, to the extent that all parties agreed mediation might be an appropriate use of their time and resources, they could have stipulated to extend the five-year period under section 583.330.  They did not.

Second, Castillo contends DHL delayed the proceedings by 116 days when it attempted to decertify the class.  Castillo argues it was impracticable to bring his case to trial between the date DHL filed its motion to decertify the class and the date the court

14

ruled on DHL's request for clarification of its order denying the motion. We are not persuaded. We see nothing about DHL's motion or tactics that impeded Castillo's ability to move his case toward trial. The court did not impose a stay while the decertification motion was pending, and there is no evidence in the record before us indicating that Castillo faced any other obstacle that impaired his ability to prosecute his case during that time. Further, " 'impracticability and futility' involve a determination of ' "*excessive* and *unreasonable* difficulty or expense," ' in light of all the circumstances of the particular case." (*Brunzell, supra*, 2 Cal.3d at p. 554.) The fact that DHL continued to litigate class certification in an attempt to avoid liability in this case does not, in our view, constitute an excessive or unreasonable difficulty.

Third, Castillo argues that the defendants caused the trial court to set the matter for trial after the five-year period because they indicated they were not ready for trial at the trial setting conference on February 28, 2014. This argument also fails because it is a *plaintiff's* duty to litigate his case diligently. "This duty of diligence applies 'at all stages of the proceedings,' and the level of diligence required increases as the five-year deadline approaches. [Citations.] The exercise of reasonable diligence includes a duty 'to monitor the case in the trial court to ascertain whether any filing, scheduling or calendaring errors have occurred.' [Citations.]" (*Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 336.) We also see no evidence that Castillo ever advised the court that the five-year deadline was approaching or attempted to obtain a trial date within the statutory period. Moreover, the fact that the defendants claimed they were not ready for trial at the trial setting conference on February 28, 2014—one week before the five-year statutory period ended—did not significantly contribute to Castillo's failure to bring his case to trial within the five-year deadline. Rather, the fact that Castillo agreed to postpone the trial setting conference to a date just one week before the end of the five-year period (and without obtaining a stipulation from the defendants to toll the five-year period under section 583.330) appears to be the source of the problem. In any event, Castillo's failure to bring the matter to the court's attention is fatal to his claim that it was impossible, impracticable or futile to bring his

15

case to trial.  (*Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1274) [" ' "Where a plaintiff possesses the means to bring a matter to trial before the expiration of the five-year period by filing a motion to specially set the matter for trial, plaintiff's failure to bring such motion will preclude a later claim of impossibility or impracticability."  [Citations.]' "].)

We also reject Castillo's assertion that the defendants failed to establish he was not diligent in bringing his case to trial.  It is the plaintiff, not the defendant, who bears the burden of proving that the circumstances warrant application of the section 583.340, subdivision (c), exception.  (*Burns, supra*, 51 Cal.4th at p. 731.)  There is also no support for Castillo's assertion that *all* litigation delays attributable to a defendant must be excluded from the five-year period provided by section 583.310.  Our courts have repeatedly emphasized that routine litigation delays do not toll the five-year statutory period.  (See *id*. at p. 731 [" 'Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of [the section 583.340] exceptions.'  [Citation.]"].)

In short, we conclude that Castillo did not exercise reasonable diligence to ensure his case was brought to trial within the statutory period.

### 4.      The Defendants Were Not Estopped to Move to Dismiss the Action

Finally, Castillo argues that the defendants should be estopped from arguing that the parties were not ordered to mediation within the meaning of section 1775.7.  We disagree.

### A.      Equitable Estoppel Does Not Apply

The elements of equitable estoppel are "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.  [Citation.]" (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.)  The existence of equitable estoppel generally is a factual question for the

16

trier of fact to decide, unless the facts are undisputed and can support only one reasonable conclusion as a matter of law. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.) We review factual findings regarding the existence of equitable estoppel under the substantial evidence test. (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1263.)

Here, the court found no basis to apply the doctrine of equitable estoppel. Specifically, the court concluded there was no evidence Castillo relied to his detriment upon anything the defendants did or said. On appeal, Castillo contends the defendants lulled him into a false sense of security by signing the stipulation to continue the post-mediation status conference which, as already discussed, represented that the court ordered the parties to mediation. The bare fact that the defendants signed a stipulation which stated, incorrectly, that the court ordered the parties to mediation does not establish that the defendants misled Castillo, particularly where, as here, Castillo—not the defendants—prepared the stipulation in question. Further, there is no evidence that Castillo was aware the five-year period to bring his action to trial was about to expire, which precludes a finding that Castillo relied to his detriment on any act or statement by the defendants. Similarly, there is no evidence the defendants possessed knowledge of any facts not also known to Castillo, another necessary prerequisite to invoke the doctrine of equitable estoppel.

### B. Judicial Estoppel Does Not Apply

" ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary." ' [Citation.] The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance,

17

fraud, or mistake.' [Citations.]" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 (*Aguilar*).)

The defendants urge us to reject Castillo's judicial estoppel argument because he failed to assert it in the trial court. (See, e.g., *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1325 [issues not raised in the trial court will not be heard for the first time on appeal].) However, upon reviewing Castillo's oppositions to the defendants' motions to dismiss, we think it is at least arguable that he presented the issue to the trial court.

Castillo contends the defendants first asserted the parties had been ordered to mediation when they signed the stipulation to continue the post-mediation conference, then asserted the parties had not been ordered to mediation in their motions to dismiss. We need not determine whether the statements identified by Castillo amount to different "positions," whether their "positions" are totally inconsistent, or whether the first position was taken without ignorance, fraud, or mistake, because we conclude that the court did not adopt or approve the defendants' first position.

As noted above, the third factor requires that the party to be estopped was successful in asserting the first position. (*Aguilar, supra*, 32 Cal.4th at p. 986.) This means that "the tribunal adopted the position or accepted it as true . . . . " (*Ibid*.) Although judicial estoppel protects a party from unfair strategy by an opponent, the point of the doctrine is not the connection between the parties, but the connection between one party and the court. (*The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 847.) Accordingly, " '[t]he factor of success—whether the court in the earlier litigation adopted or accepted the prior position as true—is of particular importance.' [Citation.]" (*Ibid*.)

In this case it is clear that the court did not adopt the defendants' alleged position (and Castillo's, for that matter) that the court ordered the parties to mediation within the meaning of section 1775.7. To the contrary, and as already discussed, the court explicitly rejected that position. Accordingly, the doctrine of judicial estoppel does not apply.

18

## DISPOSITION

The judgment of dismissal is affirmed.  The defendants are entitled to recover costs incurred in this appeal.

LAVIN, J.

WE CONCUR:


EDMON, P. J.


JONES, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*CERTIFIED FOR PARTIAL PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| HENRY CASTILLO et al., | B258432 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC409169) |
| v. | |
| DHL EXPRESS (USA) et al., | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |


BY THE COURT:

The opinion in the above-entitled matter filed on December 15, 2015, was not certified for publication in the Official Reports. For good cause, it now appears that this opinion should be published in the Official Reports with the exception of parts 3 and 4 of the Discussion.

There is no change in judgment.


_____

LAVIN, J.                    EDMON, P. J.                    JONES[*]


_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.