KRUGER, J.,
Dissenting.—Under the Code of Civil Procedure, the five-year limit for bringing an action to trial is tolled during periods when “[pjrosecution or trial of the action was stayed or enjoined” or “[bjringing the action to trial, for any other reason, was impossible, impracticable, or futile.” (Code Civ. Proc., § 583.340, subds. (b), (c) (hereafter section 583.340(b) and section 583.340(c)); see id., § 583.310.) Plaintiff in this case agreed with one of the defendants to seek a stay of the trial court proceedings in order to permit defendant to retain counsel and prepare and file its responsive pleading, as well as to permit the parties to attempt to settle their dispute out of court. The trial court gave its approval, striking an existing trial date and ordering that the action be stayed for a period of 120 days. The court today concludes that the 120-day period during which the action was stayed qualifies neither as a period when “[pjrosecution or trial of the action was stayed” (§ 583.340(b)) nor as a period when “[bjringing the action to trial” was “impracticable” (§ 583.340(c)). The result is to reward plaintiff for working cooperatively with an opposing party by depriving her of her day in court. Because that *1106 result cannot be squared with either the text of section 583.340 or the statutory policy favoring resolution of cases on the merits, I respectfully dissent.
I.
The facts relevant to the question before us are, as the majority says (maj. opn., ante, at p. 1089), not in dispute. The history of the stay at issue in this case, however, warrants some elaboration.
In November 2006, plaintiff Fannie Marie Gaines filed a complaint against defendants A.J. Roof, Josh Tomberg, and several others, including Countrywide Home Loans, Inc. (Countrywide), and Fidelity National Title Insurance Company (Fidelity). The complaint alleged that she and her husband had been deceived into selling their home to Tornberg under threat of foreclosure. The complaint sought rescission and cancellation of the deed transferring ownership of the property. Due to various complications, however, the parties were unable to clearly identify the entity that held the title to the property pursuant to a loan taken out by Tornberg. After an extended dispute on this subject, Gaines determined that the holder of the title was Aurora Loan Services, LLC (Aurora). In January 2008, she amended her complaint to name Aurora as a defendant.
In March 2008, with its responsive pleading already overdue, Aurora entered into a written agreement with Gaines to stay the case. The agreement, dated March 20, 2008, recited that Aurora “needs additional time to retain California counsel to represent its interests in this action and to prepare and file its responsive pleading,” and that “Gaines and Aurora Loan enter into this letter agreement to preserve the status quo . . . and to afford them time to explore resolution of this case . . . .” The parties agreed, among other things, “that (1) Aurora Loan shall not be required to enter an appearance, and/or answer ... for 120 days from the date of this letter (‘Stay’); (2) Gaines shall not file a request for default judgment . . . during the Stay; (3) Aurora Loan agrees to take no further steps during the Stay to foreclose the $865,000 Loan . . . ; (7) Gaines’ counsel will take the necessary steps to petition the Los Angeles Superior Court and request that the Court formally approve the Stay; and (8) . . . Gaines’ counsel agrees to coordinate with all party defendants an in person, non-binding mediation to occur before expiration of the Stay to confidentially discuss if a global resolution can be reached between all parties
In a letter dated March 31, 2008, all parties confirmed their agreement that “1. The Court strike the current September 22, 2008 Trial Date, set this case for a Trial Setting Conference on or after July 16, 2008 and enter its order *1107 that, except for the matters set forth below, all other litigation efforts in this case be stayed until on or after the future Trial Setting Conference; [¶] 2. All previously served and outstanding written discovery shall be responded to by the party obligated to respond in the near future and each serving party’s 45 day period to move to compel further responses to that discovery shall commence on the date of the future Trial Setting Conference; [¶] 3. No other discovery shall be commenced until after the future Trial Setting Conference; [¶] 4. Gaines agrees that the Court can enter an order striking the following portions of the Fourth Amended Complaint . . . and [¶] 5. All parties participate in a global mediation of all claims in this action in the near future.” The letter gave notice to the parties that Gaines would seek an ex parte order “staying until July 16, 2008 all activity in this case [except] as outlined above.”
On April 3, 2008, Gaines filed an “Ex Parte Application for Order (a) Striking Existing Trial, Final Status Conference and Post Mediation Conference Dates, (b) Staying Case for 120 Days, (c) Setting a Future Trial Setting Conference Date and (d) Directing All Parties to Participate in Good Faith in a Mediation of All Claims Within the Next 90 Days.” The motion asked for an order “(a) striking the current Trial Date . . . (b) staying this action for 120 days, except for responding to previously served and outstanding written discovery, (c) setting a Trial Setting Conference date on or after July 16, 2008, and (d) directing all parties ... to participate in good faith in a mediation of all claims
The motion stated that “Aurora Loan wants to explore settlement prior to making an appearance . . . [and] an order striking the current trial date and staying this action for 120 days is needed to accomplish these goals . . . .” The memorandum of points and authorities in support of the request for a stay adds that “Defendant Countrywide Home Loans, Inc. (‘Countrywide’) is willing to participate in this mediation only if it does not prejudice its rights to prosecute a summary judgment. . . and as such there is a need to strike the current trial date and to stay this litigation for a period of time.”
On that same day, April 3, 2008, the superior court issued the following order: “(A) The current Trial Date of September 22, 2008, the current Final Status Conference Date of September 12, 2008, and the current Post Mediation Conference Date of August 19, 2008 and Discovery Cut-Off Date are struck; [¶] (B) This case is stayed for a period of 120 days except that parties are to respond to all previously served and outstanding written discovery; [¶] (C) This case is set for a Post Mediation and Trial Setting Conference on July 16, 2008, at 8:30 a.m. in Department 33; and [¶] (D) All parties are directed to participate in good faith in a mediation of all claims in this case within the next 90 days.”
*1108 Although the 120 days expired on August 1, 2008, various judicial reassignments meant that the stay was not formally lifted until November 6, 2008, when the trial court scheduled the case for a trial setting conference. In May 2012, defendant Fidelity moved to dismiss for failure to bring the action to trial within the five-year time frame required by section 583.310. If the 120-day period is excluded from the calculation of time, then defendant’s motion to dismiss fails; if not, then not.
II.
In Code of Civil Procedure section 583.340, the Legislature instructed that, in computing “the time within which an action must be brought,” courts must exclude certain periods of time, including “the time during which” “[pjros-ecution or trial of the action was stayed or enjoined” (§ 583.340(b)) and during which “[bjringing the action to trial, for any other reason, was impossible, impracticable, or futile” (§ 583.340(c)). “[T]he evident purpose” of this provision is, as one court has observed, “to exclude from the mandatory dismissal provision time periods during which the case could not be brought to trial. The absence of trial court jurisdiction to try it . . . is one reason; a court order barring the trial (by a stay or injunction) is another.” (Holland v. Dave Altman’s R. V. Center (1990) 222 Cal.App.3d 477, 482 [271 Cal.Rptr. 706] (Holland).) In construing this provision, the Legislature has instructed that we are generally to prefer “the policy favoring trial or other disposition of an action on the merits” over “the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action.” (Code Civ. Proc., § 583.130 (hereafter section 583.130).)
The threshold question in this case is whether all or part of the period following the trial court’s order entering the stay should be excluded from the five-year time frame as a period during which “[pjrosecution or trial of the action was stayed or enjoined.” (§ 583.340(b).) Giving this language its “usual and ordinary meaning,” as we generally must do (Committee of Seven Thousand v. Superior Court (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708]), I would think that the answer to that question is yes: The period during which the trial court stayed the action counts as a period during which the prosecution (if not also the trial) of the action was stayed.
In reaching its contrary conclusion, the majority begins not with the plain language of the statute, but with our decision in Bruns v. E-Commerce Exchange, Inc. (2011) 51 Cal.4th 717 [122 Cal.Rptr.3d 331, 248 P.3d 1185] (Bruns). Bruns concerned “whether a stay of the ‘prosecution’ of the action under section 583.340(b) includes a stay of specific proceedings, such as a stay of discovery, while other aspects of the action may go forward.” (Bruns, supra, 51 Cal.4th at pp. 721-722.) Bruns answered that question in the *1109 negative, concluding—reasonably enough—that a stay of discovery or other “specific proceedings” is not the same thing as a stay of the prosecution or trial “of the action.” (See § 583.340(b), italics added; see also Bruns, supra, 51 Cal.4th at pp. 726-727.) Bruns went on to state, however, that although the plain language of section 583.340(b) might be read more broadly, its relationship to its neighboring provision, subdivision (c), calls for reading section 583.340(b) more restrictively, to apply “only when a stay encompasses all proceedings in the action.” (Bruns, supra, 51 Cal.4th at p. 723.) Bruns explained that subdivision (b) “contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which all the proceedings in an action are stayed.” (Bruns, supra, 51 Cal.4th at p. 726, italics added.) “Subdivision (c),” on the other hand, “gives the trial court discretion to exclude additional periods, including periods when partial stays were in place, when the court concludes that bringing the action to trial was ‘impossible, impracticable, or futile.’ Obviously, if a complete stay is in effect, bringing the action to trial is impossible. It makes sense for the Legislature to state a bright-line rule in this situation. The effect of a partial stay, however, can vary from stay to stay and from case to case. A partial stay might, or might not, make it ‘impossible, imprachcable, or futile’ to bring the action to trial.” (Ibid.)
As the court read the statute in Bruns, then, a “partial” stay that does not halt “all the proceedings in an action” will toll the five-year clock only if it is the sort of stay that—like a “complete” stay—makes it “impossible, imprac-hcable, or futile” to bring the action to trial under section 583.340(c). The question thus becomes whether the stay at issue here was that sort of stay.
The stay at issue was not simply a stay of discovery or other “specific proceedings,” as in Bruns. It was just about the opposite: The trial court’s order struck a scheduled trial date and put a temporary halt to all judicial proceedings with respect to all parties, with the minor exception of the exchange of responses to previously served and outstanding written discovery. (The record does not reveal whether any outstanding discovery responses were in fact exchanged.) Labels, of course, cannot be dispositive. But given the comprehensive scope of the order, it is not surprising that the trial court referred to “the case”—not merely certain “proceedings”—as having been stayed. As Justice Rubin wrote in his dissenting opinion in the Court of Appeal, if this was a “partial” stay under Bruns, “it was barely so.”
Were we writing on a blank slate, I would consider that 120-day stay to be a stay of the prosecution of the action that is excluded from the computation of the period for trial under section 583.340(b). But even if a stay is not a “stay” under section 583.340(b) if it allows the court proceedings to continue in any respect, no matter how trivial, the time for bringing the case to trial *1110 should still have been tolled because it was impracticable to bring the action to trial during this period under section 583.340(c). A stay of proceedings that is very nearly “complete,” accompanied by the striking of a scheduled trial date, is precisely the kind of stay that one would expect to toll the five-year clock under section 583.340(c) as interpreted in Bruns. The single respect in which the court proceedings were not halted—the failure to vacate existing deadlines for exchanging outstanding discovery responses—did not bring the parties meaningfully closer to bringing the case to trial. The stay at issue in this case operated, in all relevant respects, precisely in the same manner as a “complete” stay subject to automatic tolling, and the time period should have been excluded from the five-year computation for precisely the same reason: It is not “practicable” for a plaintiff to bring a case to trial during a period when the trial court has ordered otherwise. (See Holland, supra, 222 Cal.App.3d at p. 484.)
If there were any doubt on the subject, it ought to be dispelled by the rule of construction prescribed in section 583.130. That provision tells us that, although it is a “policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action ... the policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter.” (Ibid.)
In Bruns, we explained that our restrictive interpretation of the term “stay” in section 583.340(b) is consistent with this policy favoring trial because, even if the bright-line exclusion of subdivision (b) is unavailable, a plaintiff may always turn to “the more flexible subdivision (c) of the provision, which permits trial on the merits when appropriate in situations not governed by subdivision (b).” (Bruns, supra, 51 Cal.4th at p. 729.) If Bruns is to be taken at its word, then a stay that just misses the mark under subdivision (b) ought to pass with flying colors under subdivision (c). The alternative—to give a restrictive reading to both prongs of the computation statute—would hardly comport with either the Legislature’s apparent intent in enacting the exclusion for stay periods in section 583.340(b) or its instruction to err on the side of interpreting the statute to allow a plaintiff her day in court.
III.
The majority gives three reasons in support of its conclusion that the stay period at issue in this case properly counted against plaintiffs five-year time limit. First, the majority emphasizes that the stay order contemplated that the parties would use the 120-day period to, among other things, attempt to resolve their dispute out of court, and, toward that end, directed them to *1111 mediate in good faith. Mediation, the court reasons, represents the continued prosecution of the action because “it is a means by which the parties may reach a settlement of the suit.” (Maj. opn., ante, at p. 1095.) The majority thus cites the mediation both as a reason that the stay was “partial,” rather than “complete,” and a reason that the stay order did not render it “impracticable” to bring the case to trial during the relevant time period. (Maj. opn., ante, at p. 1094; see id. at pp. 1094-1095, 1102-1103.)
In my view, this argument rests on a flawed premise. Mediation is indeed a means by which parties might settle a lawsuit, as are more informal settlement discussions. But while mediation, like other settlement discussions, may obviate the need for continued pursuit of litigation, it is not part of the litigation itself. Mediation is, rather, “ ‘an alternative to litigation . . . [that] provides a simple, quick, and economical means of resolving disputes.’ ” (Simmons v. Ghaderi (2008) 44 Cal.4th 570, 578 [80 Cal.Rptr.3d 83, 187 P.3d 934], italics added; see also Code Civ. Proc., § 1775, subd. (d) [describing mediation as an “alternative[] to trial”]; Cassel v. Superior Court (2011) 51 Cal.4th 113, 132-133 [119 Cal.Rptr.3d 437, 244 P.3d 1080] [noting that mediation can resolve “disputes by means short of litigation” and describing mediation as an “alternative means of resolution”].)[1] The majority’s contrary notion seems particularly out of place in the context of interpreting a statute governing the time to bring “[a]n action ... to trial.” (Code Civ. Proc., § 583.310, italics added.) Given the Legislature’s overarching concern with the exercise of “reasonable diligence in the prosecution of an action”—to the end of bringing the action to “trial or other disposition ... on the merits” (id., § 583.130)—there is little reason to suppose that, by using the phrase “[prosecution ... of the action” (§ 583.340(b)), the Legislature meant to refer to steps taken to avoid bringing the action to trial or otherwise resolving the action on the merits through the judicial process.
In any event, if the prospect that the parties would use the stay period to attempt to settle their differences out of court sufficed to disqualify the stay under section 583.340, then it is hard to imagine what kind of court-ordered stay would qualify for tolling under the statute. The logical consequence of this view would be that even a stay order that halted court proceedings in every conceivable respect would not stop the five-year clock if it permitted the parties to discuss settlement out of court. I am not aware of any court that *1112 has ever not permitted parties to attempt to settle, nor am I aware of any stay order that has been interpreted to have such an effect. It is unlikely that this is what the Legislature intended when it drafted section 583.340.
Perhaps by its italicized reference to the court order “directing [the parties] to mediate” (maj. opn., ante, at p. 1095), the majority means to suggest that there is something special about the court’s order to “participate in good faith in a mediation of all claims” that specially disqualifies the stay under section 583.340. If so, it is not clear what, precisely, that something might be. The majority asserts that by its order, the court “incorporat[ed] the procedure and rules that govern mediation into the prosecution of the case.” (Maj. opn., ante, at p. 1095.) How this might have occurred, the majority does not explain.[2] Orders to participate in mediation or other settlement negotiations in good faith are common. Such orders are not generally thought to transform such settlement discussions into a kind of adjunct judicial forum, with the mediator acting as a kind of deputized bench officer. Even when backed by a court’s order to participate in good faith, mediation remains an alternative to litigating the action to an ultimate conclusion on the merits. It is not part of the litigation itself.
Second, the majority reasons that the stay “did not qualify for tolling under section 583.340(c)” because, while the stay was in effect, “nothing prevented Gaines from conducting her own trial preparation during this time.” (Maj. opn., ante, at p. 1102.) By this reasoning, the majority would all but read section 583.340(b) out of the statute. Under any stay order—even a “complete” stay order within the meaning of Bruns—the parties are always free to conduct their own trial preparation. True, depending on the circumstances that gave rise to the stay, trial preparation may seem, as a practical matter, inefficient or premature. But the possibility that the parties to a stayed action might make profitable use of the stay period does not render it any less a “stay,” nor does it make it any more “practicable” to bring the case to trial while the stay remains in effect. To hold otherwise gives insufficient weight to the Legislature’s determination that a court-ordered stay of the prosecution *1113 or trial of the action constitutes a circumstance of impracticability that warrants tolling the five-year clock.
Finally, the majority asserts that “ ‘[f]or the tolling provision of section 583.340[(c)] to apply, there must be “a period of impossibility, impracticability or futility, over which plaintiff had no control (Maj. opn., ante, at p. 1102.) The majority concludes “that the circumstances of the partial stay were not beyond Gaines’s control” because Gaines voluntarily agreed both to mediation and to the stay, and could have sought to have the stay vacated before it expired. (Maj. opn., ante, at p. 1103.)
In my view, this reasoning, too, is fundamentally flawed. Begin with the text: The words “over which plaintiff had no control” do not appear anywhere in Code of Civil Procedure section 583.340—although similar language does appear in the parallel provision governing the calculation of the three-year period during which service must be made. (See Code Civ. Proc., § 583.240 (hereafter section 583.240) [“In computing the time within which service must be made pursuant to this article, there shall be excluded the time during which . . . : [¶] . . . [¶] (d) Service, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiffs control.” (italics added)].) As a general rule, when a legislature “ ‘includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion.’ ” (Russello v. United States (1983) 464 U.S. 16, 23 [78 L.Ed.2d 17, 104 S.Ct. 296]; see also, e.g., People v. Trevino (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283] [“When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.”].) Applying that rule in Bruns, we refused to “engraft onto subdivision (b) an exception that the Legislature explicitly included in section 583.240 but did not include in section 583.340(b).” (Bruns, supra, 51 Cal.4th at p. 727.) The same result ought to obtain here.
The difference in the wording of the two provisions reflects a basic difference in their functions. The primary purpose of the dismissal statutes is to ensure that plaintiffs prosecute their cases with “reasonable diligence.” (§ 583.130.) From that standpoint, there are significant differences between the timing of service and the timing of bringing a case to trial. As the California Law Review Commission comment to section 583.240 observes, that provision is designed to advance “one aspect of the policy announced in Section 583.130—plaintiff must exercise diligence—and recognizes that service, unlike bringing to trial, is ordinarily within the control of the plaintiff.” (Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 933.) In other words, *1114 because the timing of service generally lies in the plaintiffs sole discretion, a plaintiff who effects service beyond the prescribed time limits does not act diligently unless the delay results from some circumstance beyond his or her control.
But the timing of trial, unlike the tinting of service, does not rest in the plaintiffs sole discretion, and therefore may be affected by “factors not reasonably within the plaintiffs sole control. (17 Cal. Law Revision Com. Rep., supra, at p. 936, italics added.) As the Legislature itself recognized, once the wheels of judicial process have been set in motion, bringing the case to trial requires “all parties [to] cooperate.” (§ 583.130.) Here, a primary reason for the stay was to permit Aurora, which had just been added as a defendant, to retain California counsel and prepare and file its responsive pleading, as well as to accommodate Aurora’s desire to explore settlement before making an appearance. And the parties did not simply agree among themselves to delay the continuation of court proceedings; they sought and received the trial court’s approval. Once the court entered the stay order, the order had the same force and effect as any other stay order, including one entered over a party’s objection.
It is certainly true that the decision to agree to her opposing party’s request was not beyond Gaines’s control in any absolute sense; she could have refused. (Of course, had she done so, there is no guarantee her objection would have carried the day; the trial court might well have granted the stay regardless.) But the decision to accommodate an opposing party does not reflect a lack of reasonable diligence. It reflects a willingness to cooperate. To fault Gaines for agreeing to seek the stay—or for failing to seek to lift the stay before its expiration—simply creates unfortunate incentives for the conduct of pretrial litigation, without meaningfully advancing the policies underlying the dismissal statute.
IV.
The majority points out that the parties could have extended the five-year time limit by means of a written stipulation or an oral agreement in open court. (Code Civ. Proc., § 583.330; maj. opn., ante, at p. 1093.) That is true, and parties who find themselves in a similar position in the future would be well advised to avail themselves of this option. It is, however, cold comfort to Gaines—who, before the court’s opinion today, would have had no reason to believe that any stipulated extension would be necessary. Section 583.330 permits the parties to extend the five-year period without the consent or participation of the trial court. But section 583.340 commands courts to exclude periods during which the “[pjrosecution or trial of the action was stayed” or during which “[bjringing the action to trial” was otherwise *1115 “impracticable.” Under a straightforward reading of the statute, the 120-day-long stay in this case ought to qualify as such a period.
The “tolling provisions of Code of Civil Procedure section 583.340 must be liberally construed consistent with the policy favoring trial on the merits.” (Dowling v. Farmers Ins. Exchange (2012) 208 Cal.App.4th 685, 693 [145 Cal.Rptr.3d 748].) The majority opinion fails to do so. It instead reaches the textually implausible conclusion that a trial court order that strikes the trial date and stays the case does not toll the five-year period under section 583.340, thereby ensuring that no court will decide the merits of plaintiffs claim. I respectfully dissent.
Liu, J., concurred.

 Section 1775.7 of the Code of Civil Procedure, on which the majority relies, provides no indication of any legislative “intent to treat mediation as part of the prosecution of the action.” (Maj. opn., ante, at p. 1096.) It instead reflects a recognition that, in the absence of a court-ordered stay, mediation has no necessary impact on the continued prosecution of the action and thus ordinarily does not warrant tolling, except insofar as the mediation remains pending after four years and six months. This statute has no particular' bearing on the question here, which concerns whether it was “practicable” for plaintiff to bring the case to trial during the period when the case had been stayed by the trial court.

 The sole explanation the majority provides is a parenthetical citation of the statutory rules governing cases submitted to mediation under the civil action mediation program created by Code of Civil Procedure section 1775 et seq. Defendants themselves, however, appear to have conceded these provisions “are not directly applicable to this case” because the case was not submitted to mediation pursuant to the civil action mediation program. It is, moreover, unclear whether section 1775 et seq. could have any application to private mediation, as this mediation appears to have been. (See Castillo v. DHL Express (USA) (2015) 243 Cal.App.4th 1186, 1197 [197 Cal.Rptr.3d 210] [interpreting § 1775 et seq. to apply “only to court-annexed mediation programs” and not private mediation].) No party has asked us to resolve that question in this case.
In any event, even if Code of Civil Procedure section 1775 et seq. did apply, nothing in the statutory scheme purports to “incorporatefe] the procedure and rules that govern mediation into the prosecution of the case.” (Maj. opn., ante, at p. 1095.)