Filed 2/25/16

# IN THE SUPREME COURT OF CALIFORNIA

MILTON HOWARD GAINES, )
)
        Plaintiff and Appellant, )
)         S215990
        v. )
)         Ct.App. 2/8 B244961
FIDELITY NATIONAL TITLE )
INSURANCE COMPANY et al., )
)         Los Angeles County
        Defendants and Respondents. )     Super. Ct. No. BC361768
_____ )

Plaintiff's lawsuit was dismissed for failure to comply with Code of Civil Procedure[1] section 583.310, which requires that an action "be brought to trial within five years after the action is commenced against the defendant." The issue here is whether the statute was tolled by an order entered pursuant to the parties' agreement. The order struck the trial date and "stayed" the proceedings while the parties engaged in mediation and completed all outstanding discovery.

In computing the five-year time frame, the court must exclude any period when the "[p]rosecution or trial of the action was stayed or enjoined." (§ 583.340, subd. (b), hereafter section 583.340(b).) The court must also exclude any time when it was "impossible, impracticable, or futile" to bring the case to trial. (§ 583.340, subd. (c), hereafter section 583.340(c).) The trial court held that

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

SEE DISSENTING OPINION

neither of those tolling provisions saved this case from dismissal. The Court of Appeal affirmed the dismissal as to all but one defendant. We affirm the Court of Appeal's judgment. As explained in greater detail below, the statutory framework and our own case law recognize that a stay can be either partial or complete. A complete stay will operate to automatically toll the five-year period. A partial stay will not do so unless it results in a circumstance of impossibility, impracticability, or futility. We conclude that the court's order did not effect a complete stay of the prosecution of the action. Nor did the order create a circumstance of impracticability because plaintiff agreed to it, remained in control of the circumstances, and made meaningful progress towards resolving the case during the stay period. Accordingly, the period of the "mediation stay" did not toll the five-year period.

## I. BACKGROUND

Fannie Marie Gaines and her husband, Milton, owned a home in Los Angeles with an appraised value of $1.25 million. They held over $500,000 in equity in the property. A $554,000 loan with Countrywide Home Loans, Inc. (Countrywide) was secured by a first deed of trust. The Gaineses fell behind in their mortgage payments, received two notices of default from Countrywide, and failed in their attempts to refinance. Facing foreclosure, they agreed to sell the property to Tornberg, Johnson, and Ray Management (Tornberg) with an option to lease the property and repurchase it. Tornberg obtained loans that were secured by the property and subsequently transferred to various entities. The complaint here alleges that Tornberg and others involved in the transaction deceived the couple into selling their home under threat of foreclosure.

Milton died before the suit was filed. Mrs. Gaines filed a complaint on November 13, 2006, alleging negligence, fraud, intentional infliction of emotional distress, and failure to follow home equity sales contract requirements contained in

2

the Civil Code. She sought rescission and cancellation of the deed transferring ownership of the property.

Once begun, the suit followed an involved procedural journey. Amended complaints and answers were filed and defendants substituted. In November 2009 Mrs. Gaines died and her son, Milton Howard Gaines, was substituted as successor in interest.[2] An extended dispute subsequently arose concerning whether one of the defendants, Aurora Loan Services, LLC (Aurora) held legal title to the property. Aurora originally admitted holding title, but subsequently urged that Lehman Brothers Holdings, Inc. (Lehman), by then in bankruptcy, was the actual owner. Much delay resulted from disputes over that question and plaintiff's ultimate motion for relief from Lehman's bankruptcy stay. We need not delve into those complexities to resolve the question before us.

On May 19, 2012, Fidelity National Title Insurance Company (Fidelity) moved to dismiss for failure to bring the action to trial within the five-year time frame required by section 583.310. When the motion was filed, the case had been pending for approximately five and a half years. A trial date was scheduled for August 6, 2012. At no time did Gaines move to advance the trial date.

In opposition to the motion, Gaines claimed the five-year period had been tolled several times. In computing the period of pendency, the trial court excluded two months for the delay resulting from Mrs. Gaines's death, and 125 days during which plaintiff sought relief from Lehman's bankruptcy stay. Those rulings are not disputed here. However, the court did not exclude the time during which the court had vacated the trial date and ordered a 120-day stay of proceedings to

---

[2]  For clarity and ease of reading, we simply refer to plaintiff as Gaines throughout the opinion except as it becomes necessary to distinguish between Fannie Marie and her son, Milton.

permit the parties to engage in mediation. It concluded that, because this mediation period did not support tolling, the scheduled trial date exceed the five-year limitation by 82 days. The case was ultimately dismissed in its entirety on August 24, 2012.

The facts relevant to the question before us are undisputed. In April 2008 Gaines applied for an order to vacate a September 2008 trial date, which was scheduled to occur less than two years into the pendency of the litigation. The application stated that all parties had agreed to vacate the trial date, to stay the action for 120 days, and to participate in mediation. The parties agreed that responses to pending discovery requests would not be stayed. Consistent with this agreement, the trial court's April 3, 2008 order: (1) "struck" the current trial date of September 22, 2008; (2) "stayed [the case] for a period of 120 days except that [the] parties are to respond to all previously served and outstanding written discovery;" (3) set a post-mediation and trial-setting conference on July 16, 2008; and (4) directed "all parties . . . to participate in good faith in a mediation of all claims in this case within the next 90 days." The ensuing mediation conducted on May 30, 2008, was not successful except that Gaines moved to dismiss one defendant on June 9, 2008, in exchange for the reconveyance of its $150,000 interest in the property.

At a November 6, 2008, status conference, the mediation stay was lifted and an August 29, 2009, trial date was set. The original stay was ordered to last 120 days, but was actually lifted after 217 days. The longer period was occasioned, in part, by judicial reassignments. We analyze the legal question here in terms of the 217-day period between granting and lifting the mediation stay.

The trial court concluded that section 583.340(b) did not apply to this period because there was not a complete stay of the prosecution as required under that exception. It further concluded that the mediation stay did not create a

4

circumstance of impossibility, impracticability, or futility under section 583.340(c). The stay was requested by plaintiff and was not a circumstance beyond plaintiff's control. It was to last only 120 days and did not affect previously served and outstanding written discovery. Further, plaintiff did not demonstrate diligence during the period in question.

The Court of Appeal affirmed the trial court's dismissal as to all defendants but Lehman.[3] We uphold the Court of Appeal.

## II. DISCUSSION

An action must be brought to trial within five years after it is commenced. (§ 583.310.) If this deadline is not met, the action "shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties . . . ." (§ 583.360, subd. (a).) "The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.360, subd. (b).) The question before us is whether the trial court's order vacating the trial date and granting the mediation stay fell within one of the statutorily recognized exceptions to the five-year period. In construing these provisions, "the policy favoring the right of parties to make stipulations in their own interests and the policy favoring trial or other disposition of an action on the merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action . . . ." (§ 583.130.)

The statutes governing dismissal for delay in prosecution were revised in 1984. (Stats. 1984, ch. 1705, § 5, pp. 6176-6180.) The legislative history makes clear that the revision was prepared by the California Law Revision Commission.

---

[3] Its ruling as to Lehman is not before us.

5

The Legislature and commission intended largely to codify, not supplant, the quasi-common law developments in this area that had evolved over the preceding decades.  (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1366 (1983-1984 Reg. Sess.) as amended July 3, 1984, p. 3 [" 'The major purpose of the bill is to clarify ambiguities in the law, to bring the statutes into conformity with case law interpreting them, and to reconcile discrepancies in statutes and cases' "]; Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 916 ["The statutes should accurately state the law.  The proposed law codifies the significant case law rules governing dismissal for lack of prosecution . . . ."].)  Accordingly, in addition to the statutory language, a substantial body of case law guides our analysis.

        A.  *Submission of the Action to Mediation* (§ 1775.7)

        We begin with section 1775.7, which expressly addresses the effect of mediation on the running of the five-year period.  That section provides that submission of an action to mediation under the title's provisions *shall not toll* the running of section 583.310's five-year period except when the action is or remains submitted to mediation more than four years and six months after the action is filed.  (§ 1775.7, subds. (a), (b).)  Although neither party cited the mediation statutes in the courts below, we have discretion to consider whether these statutes affect this dismissal, which is a question of law raised by the parties and pertinent to a proper disposition of the case.  (*People v. Randle* (2005) 35 Cal.4th 987, 1001-1002, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 195.)

        Section 1775.7 is part of a statutory scheme implementing the civil action mediation program.  (*Jeld-Wen, Inc. v. Superior Court* (2007) 146 Cal.App.4th 536, 540 (*Jeld-Wen*).)  Its provisions apply to cases with an amount in controversy not exceeding $50,000 (§ 1775.5), and to all cases, regardless of potential liability,

when all parties file a written stipulation to mediate (Cal. Rules of Court, rules 3.890 & 3.891(a)(2); *Jeld-Wen,* at p. 541). The parties did so here.

Section 1775.7 provides for automatic tolling when mediation is conducted late in the pendency period. (Cf. *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 434 (*Howard*) [discussing parallel provisions of § 1141.17 governing court-ordered arbitration].) "[T]he five-year statute will only stop running for [mediations] beginning or continuing into the last six months of the five-year period, and then only from the four-year six-month date after filing the action until the date a trial de novo is requested." (*Howard*, at p. 434.) This mediation, which occurred in the second year of litigation, does not qualify for tolling under section 1775.7. Gaines does not contend otherwise.

B. *Time During Which Prosecution or Trial of the Action was Stayed or Enjoined* (§ 583.340(b))

The order in this case did not simply direct the parties to mediate. It also struck the scheduled trial date of September 22, 2008 and "stayed [the case] for a period of 120 days except that [the] parties are to respond to all previously served and outstanding written discovery" and "are directed to participate in good faith in a mediation of all claims in this case within the next 90 days." Gaines argues these conditions triggered the exception codified in section 583.340(b) that requires the court to exclude the time during which "[p]rosecution or trial of the action was stayed or enjoined."

Applying our holding in *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 725 (*Bruns*), the trial court and Court of Appeal concluded that this stay did not qualify for tolling under section 583.340(b) because it was not a *complete* stay of all the proceedings in the action. We asked the parties for supplemental briefing on whether the order striking the existing trial date

7

constituted a stay of the "trial of the action" under that section. (*Ibid*.) We conclude that neither condition was satisfied here.

1. *Stay of the Trial*

To decide whether section 583.340(b) applies, we must distinguish between a stay of the trial and a continuance. Under section 583.340(b), a stay of the trial halts the running of the five-year period. (*Bruns*, *supra*, 51 Cal.4th at p. 725.) By contrast, a continuance generally does not. We have long observed that "[s]tipulations [by the parties] that merely extend the time for trial within the five-year period, absent a showing that the parties intended otherwise, will not extend the five-year period." (*J. C. Penney Co. v. Superior Court* (1959) 52 Cal.2d 666, 669 (*J. C. Penney*); accord, *Miller & Lux Inc. v. Superior Court* (1923) 192 Cal. 333, 337-338 (*Miller & Lux*); *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1269, fn. 3.)

The label the trial court uses is not dispositive of the inquiry. (*Holland v. Dave Altman's R. V. Center* (1990) 222 Cal.App.3d 477, 482 (*Holland*).) What matters is whether the order is functionally in the nature of a stay, which implicates the legislative purposes behind tolling the five-year period, or whether it is functionally in the nature of a continuance, which does not. Accordingly, we do not read too much into the trial court's declaration that the trial date is being "struck," as opposed to "continued" or "stayed." We review the question de novo because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 (*Parsons*).)

The long-standing judicial understanding of the term stay in the context of the five-year statute is that it refers to those postponements that freeze a proceeding for an indefinite period, until the occurrence of an event that is usually extrinsic to the litigation and beyond the plaintiff's control. *Holland*, *supra*, 222

8

Cal.App.3d 477, provides an example.  There, the plaintiff appealed the trial court's order quashing service on one of the defendants.  (*Id*. at p. 479.)  The plaintiff filed an " 'Ex Parte Motion for Continuance of Defendant's Motion for Summary Judgment, Trial Date, Mandatory Settlement Conference, and Demand for Designation of Expert Witnesses.' " (*Id*. at p. 481.)  The trial court ordered that " 'the trial date set for March 17, 1987 . . . be continued until the pending appeal has been decided.' " (*Ibid*.)  The minute order reflected that the trial date was vacated and the case was " 'off calendar' " " 'pending ruling on appeal.' " (*Ibid*.)  A subsequent minute order additionally stated:  " 'Mandatory settlement conference and trial to be reset in Department NWA after ruling of appellate court.' " (*Id*. at p. 482.)  The appeal was ultimately resolved against the plaintiff over a year later, on March 29, 1988.  (*Id*. at p. 480.)

The appellate court concluded that, notwithstanding the use of the term " 'continue,' " the order amounted to a stay of the trial under section 583.340(b). (*Holland, supra,* 222 Cal.App.3d at p. 482.)  The court reasoned that "it is plain . . . the court did not intend to postpone trial to any known date.  Instead, it put the trial over indefinitely, until the happening of a designated event:  determination of the . . . appeal.  The legal effect of this order was to stay, rather than to continue the trial." (*Ibid*; accord, *Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1773-1774 [stay pending appeal of order disqualifying plaintiff's counsel in related action]; *Rosenthal v. Wilner* (1988) 197 Cal.App.3d 1327, 1331, 1333-1334 [appellate court's order directing trial court to stay all proceedings pending resolution of related appeal that would affect issues such as proximate cause and damages tolled the proceedings under § 583.340(b)]; *Hughes v. Portsmouth Square, Inc.* (1982) 135 Cal.App.3d 170, 173 [under former § 583, the filing of a petition in bankruptcy qualifies for tolling because it operates as a stay on the commencement or continuation of any action against the bankrupt

9

party]; cf. *Spanair S.A. v. McDonnell Douglas Corp.* (2009) 172 Cal.App.4th 348, 358-359 [removal of case to federal court suspended trial court's jurisdiction]; *Bergin v. Portman* (1983) 141 Cal.App.3d 23, 25-26 [appeal of motion for summary judgment suspended trial court's jurisdiction].)

By contrast, stipulated continuances that are not tied to any matter outside the parties' control more logically fall under section 583.330. That section provides that the parties may extend the five-year period during which an action must be brought to trial by written stipulation or oral agreement made in open court. (§ 583.330, subds. (a), (b).) The reason for the requirement was given as follows: "The provision [of former section 583] that a written stipulation be entered into was intended to preclude all disputes, with their attendant charges and countercharges of overreaching and unethical conduct, by a requirement that clear and uncontrovertible evidence be presented to the court that the statutory time was deliberately intended to be extended by both parties." (*Miller & Lux*, *supra*, 192 Cal. at p. 340 [discussing former § 583]; accord, *Taylor v. Shultz* (1978) 78 Cal.App.3d 192, 196.) There was no written stipulation or oral agreement here.

We conclude that this order striking the trial date at the parties' request should be construed as a continuance of the trial of the action rather than a stay. The trial was not continued indefinitely. Instead, the date was struck pending two defined contingencies: a definite 90-day period for mediation to occur and a 120-day stay of the proceedings. Neither of the contingencies was extrinsic to the litigation. Both were agreed to by the parties and totally within their control. Neither necessitated a stay of the trial, which was over five months distant. Plaintiff represented that "good cause exist[ed] for granting the parties' request for a continuance of the current trial date" because newly named defendant, Aurora, had not formally appeared or conducted discovery, and defendant Countrywide anticipated filing a motion for summary judgment. (See Cal. Rules of Court, rule

3.1332(c) [grounds for continuance of trial].) Although the order did not set a new trial date, it identified a date certain to resume proceedings by calendaring a July 16, 2008 trial-setting conference. This stipulated trial postponement, agreed to by the parties and not occasioned by an extrinsic proceeding, court order, or law barring action, does not qualify for automatic tolling.

    2. *Stay of the Prosecution of the Action*

    In *Bruns*, *supra*, 51 Cal.4th 717, we addressed the meaning of a stay of the prosecution of the action under section 583.340(b). There the plaintiff sought to exclude time during which stays of discovery and other specific proceedings were in effect. (*Bruns*, at p. 721.) We held that "the prosecution of an action is stayed under subdivision (b) *only* when the stay encompasses *all* proceedings in the action." (*Id*. at p. 722, first italics added.) We reasoned: "subdivision (b) contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which *all the proceedings* in an action are stayed." (*Id*. at p. 726, italics added.) Such complete stays " 'stop the prosecution of the action altogether' " (*id*. at p. 730, quoting Black's Law Dict. (5th ed. 1979) p. 1267, col. 1), making it impossible to bring the action to trial (*Bruns*, at p. 726). The circumstances of a partial stay can vary, however, and might not have such an effect. (*Ibid*.) In the latter circumstance, the court must look to the " 'impossible, impracticable, or futile' " standard of section 583.340(c) to assess the effect of a partial stay of the proceedings. (*Bruns*, at pp. 726, 730.)

    This order provided that the "case is stayed for a period of 120 days." Nonetheless, it contemplated that the case would move forward during the relevant period in two respects: The parties were ordered to respond to previously served and outstanding discovery and to participate in mediation in an effort to settle the lawsuit. The trial court found this stay was only a partial one that did not qualify

11

for automatic tolling under section 583.340(b). We review the question de novo because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence. (*Parsons*, *supra*, 62 Cal.2d at p. 865.) As with the stay of trial exception discussed above, the label used in the trial court's order is not dispositive. (*Holland*, *supra*, 222 Cal.App.4th at p. 482.)

"The term 'prosecution' is sufficiently comprehensive to include every step in an action from its commencement to its final determination." (*Ray Wong v. Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 (*Ray Wong*).) Discovery constitutes a step in the prosecution of the action. (*Melancon v. Superior Court* (1954) 42 Cal.2d 698, 707 [depositions].) Because the order required the parties to comply with previously served and outstanding written discovery, it did not " 'stop the prosecution of the action altogether.' " (*Bruns*, *supra*, 51 Cal.4th at p. 730.) Gaines counters that the provision allowing for ongoing discovery was "merely precautionary" and that "there was no evidence presented that any discovery responses were ever served during the period of the stay." This argument misses the mark. As the Court of Appeal observed, "[w]hether any party actually served discovery responses during the 2008 stay does not recharacterize the trial court order, which allowed for some discovery to take place during the stay."

We further conclude that submission of this action to mediation pursuant to the parties' filed stipulation constituted a "step in [the] action" (*Ray Wong*, *supra*, 199 Cal. at p. 18), within the meaning of section 583.340(b) and *Bruns*. Mediation is "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." (§ 1775.1, subd. (a); accord, Evid. Code, § 1115, subd. (a).) It does not abate the civil suit; it is a means by which the parties may reach a settlement of the suit. (*Jeld-Wen, supra,* 146 Cal.App.4th at p. 540.) These parties sought a court order *directing them to mediate* pursuant to their written

stipulation, thus incorporating the procedure and rules that govern mediation into the prosecution of the case. (§ 1775 et seq.; see discussion, *ante*, at pp. 6-7.)[4]

Cases hold that a stay of proceedings pending the outcome of contractual arbitration tolls the five-year period under section 583.340(b). (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1801 (*Brock*); see *Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 212-213 (*Marcus*); see generally §§ 1281.2, 1281.4.)[5] *Marcus* characterized a stay pending contractual arbitration as a stay " 'as to all issues, as to all causes of action, and as to all parties, until arbitration is concluded . . . .' " (*Marcus*, at p. 209, quoting *Cook v. Superior Court* (1966) 240 Cal.App.2d 880, 885.) *Bruns* cited *Marcus* as an example of a complete stay of proceedings. (*Bruns*, *supra*, 51 Cal.4th at p. 729.) As *Bruns* explained, the Legislature enacted subdivision (b) with contractual arbitration in mind. (*Bruns*, at p. 729.) The Law Revision Commission's comment to section 583.340(b) states that "[s]ubdivision (b) codifies existing case law," citing *Marcus, supra,* 75 Cal.App.3d 204. (17 Cal. Law Revision Com. Rep., *supra*, at p. 935.)[6]

---

**4**      We have no occasion to consider how the parties' participation in informal settlement discussions might affect a stay of proceedings (see dis. opn. of Kruger, J., *post*, at pp. 9-10), and we offer no opinion on that question.

**5**      Contractual arbitration is to be distinguished from judicial arbitration, which we discuss separately at page 7, *ante*, and pages 14-15, *post*. (See *Nanfito v. Superior Court* (1991) 2 Cal.App.4th 315, 318-319; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 580, pp. 1101-1102.)

**6**      As the Court of Appeal observed in *Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 469 (*Sierra Nevada*): "Section 583.340 was added to the code in 1984 without change as proposed by the California Law Revision Commission. (See 17 Cal. Law Revision Com. Rep. (1984) pp. 905, 935.) For that reason the report of the commission is entitled to substantial weight in construing the statute, particularly since the Law Revision Commission's comment which accompanied the proposed statute through the legislative process is brief."

Those cases are distinguishable. Contractual arbitration and mediation are different. Contractual arbitration is a remedy distinct from an action at law. Its assertion constitutes a plea in abatement to the civil suit. (*Brock, supra,* 10 Cal.App.4th at pp. 1793, 1795-1796.) A party seeking to enforce contractual arbitration is statutorily entitled to a stay of pending legal actions. (§ 1281.4.) "Once a court grants [a] petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration" to determine, upon conclusion of the arbitration proceedings, whether an award on the merits requires dismissal of the legal action. (*Brock*, at p. 1796.) This is so, in part, because the whole point of contractual arbitration is to obviate the need for an action at law. The court in *Brock* found the distinction between an action at law and a contractual arbitration proceeding critical in deciding that a stay pending contractual arbitration tolled the five-year period under section 583.340(b). (*Brock*, at pp. 1792-1793, 1796.)

By contrast, mediation is not an event *outside* the lawsuit; it is one means by which a settlement *of the lawsuit* may be reached. (§ 1775.1, subd. (a); Evid. Code, § 1115; *Jeld-Wen*, *supra*, 146 Cal.App.4th at p. 540.) It does not effectively abate the litigation " 'as to all issues, as to all causes of action, and as to all parties.' " (*Marcus, supra*, 75 Cal.App.3d at p. 209.) Section 1775.7 lends further support. That section provides that submitting an action to mediation shall not suspend the five-year statute (*id*., subd. (a)), unless the action "is or remains submitted to mediation . . . more than four years and six months after the plaintiff has filed the action . . . ." (*id*., subd. (b)). The period involved here did not fall within section 1775.7's timeline. In *Howard*, *supra*, 10 Cal.4th 424, we held that the parallel statute governing judicial arbitration (§ 1141.17) "restricts the amount of time that can be tolled automatically as the result of submitting an action to

14

arbitration," thus effectively preempting automatic tolling under section 583.310 for arbitration conducted in the first four and a half years of the litigation. (*Howard*, at p. 434.) The provisions of section 1775.7 demonstrate the Legislature's intent to treat mediation as part of the prosecution of the action.

The dissent challenges this conclusion by citing general case law and statutory language that describes mediation as an " 'alternative' " to trial or litigation. (Dis. opn. by Kruger, J., *post*, at p. 9.) But these descriptions provide little assistance in determining whether submitting an action to mediation should be considered a step in the prosecution of the action under section 583.340(b). Many pretrial proceedings may terminate the action short of trial: Discovery between the parties may result in a settlement, and a demurrer or summary judgment motion may lead to a dismissal. But that result does not change the fact that these are all "step[s] in [the] action." (*Ray Wong*, *supra*, 199 Cal. at p. 18.) Indeed, section 583.130 sets forth a "policy favoring trial *or other disposition of an action on the merits*." (Italics added.) Mediation resulting in a voluntary settlement of the lawsuit by the parties can be one such disposition.

By its terms, the April 3, 2008 order was not a complete stay " 'used to stop the prosecution of the action altogether.' " (*Bruns*, *supra*, 51 Cal.4th at p. 730.) It directed that some discovery continue, and that the parties participate in mediation. Section 583.340(b) is therefore inapplicable. (*Bruns*, at p. 730.)

Our construction of section 583.340(b) should encourage, rather than deter, agreements to partial stays and to continuances of the trial within the five-year period as the parties deem necessary. (See § 583.130.) Plaintiffs who desire tolling for the relevant period can achieve it by obtaining defendants' written stipulation or express oral agreement in court. (§ 583.330.) Conversely, defendants will have the predictability of knowing that, absent such agreement, a

15

stipulated continuance of the trial date or a partial stay of the proceedings will not later be construed to automatically toll the statute.

3. *Estoppel*

Gaines argues that defendants, having agreed to the 120-day partial stay, are estopped from claiming that the five-year statute was not tolled for that period. (See § 583.140.) The argument fails.

Equitable estoppel requires that: (1) the party to be estopped was aware of the operative facts and either intended that its act or omission be acted upon, or acted in such a way that the party asserting estoppel rightfully believed it was intended; and (2) the party asserting estoppel was unaware of the facts and relied on the other party's conduct to its detriment. (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 994.) The party asserting estoppel has the burden to establish these elements. (*Busching v. Superior Court* (1974) 12 Cal.3d 44, 53; *Valerio v. Boise Cascade Corp.* (1986) 177 Cal.App.3d 1212, 1221.)

Substantial evidence supports the trial court's rejection of Gaines's estoppel argument. (*Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1423 (*Jordan*); *International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 354; *In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850.) The parties' communications regarding the stay explicitly set forth their expectations. Nowhere did those communications reflect an understanding that the five-year statute would be tolled.

A letter drafted by Aurora and signed by Gaines's counsel memorialized the agreement between them. The letter stated the parties' agreement that Aurora would not be required to enter an appearance or answer the fourth amended complaint for 120 days and that Gaines would not file a request for default judgment during that period. The letter also set forth several agreements designed "to preserve the status quo as between themselves concerning the $865,000 Loan

16

and the Longwood Property," specifically: "(3) Aurora Loan agrees to take no further steps during the Stay to foreclose the $865,000 Loan against the Longwood Property; (4) Aurora Loan agrees to toll as of February 26, 2008 the 'running' of the three month period provided for in Civil Code section 2924[, subdivision] (a)(2); (5) Aurora Loan agrees not to post or record or publish a notice of sale as provided for by Civil Code sections 2924[, subdivisions] (a)(3) and [(f)] during the Stay; (6) Aurora Loan and Gaines shall execute a stipulation to toll the recordation of a Notice of Trustee's Sale during the Stay, which stipulation may be filed with the Los Angeles Superior Court for entry by the court . . . ." Although the letter specifically mentioned the tolling effect of these latter agreements, nowhere does it mention tolling of the five-year period for trial.

A letter from Gaines's counsel to the remaining defendants set forth terms consistent with those ultimately adopted in the order. Specifically, it referred to staying the litigation "except for the matters set forth below," which included that the parties were to respond to all previously served and outstanding written discovery and participate in a global mediation of all claims. Again, there was no reference to tolling the five-year dismissal statute.

Finally, Gaines's application in support of the order represented that the parties mutually agreed to the 120-day stay as a means to defer certain filing deadlines under the "Fast Track" system,[7] which limits the parties' ability to stipulate to continuances. (Gov. Code, §§ 68607, subd. (g), 68616.) The application represented that Aurora "wants to explore fully the possibilities for resolving this case before formally making an appearance and incurring attorneys' fees and costs in defending itself; but the Fast Tract [sic] Rules require an

_____

[7] Officially titled the Trial Court Delay Reduction Act. (Gov. Code, § 68600 et seq.)

17

appearance and as such an order striking the current trial date and staying this action for 120 days is needed to accomplish these goals." It further stated that "Countrywide is willing to participate in this mediation only if it does not prejudice its rights to prosecute a summary judgment . . . motion if the mediation is not successful and as such there is a need to strike the current trial date and to stay this litigation for a period of time." Citing California Rules of Court, rule 3.1332(c), Gaines represented that these circumstances amounted to good cause, and that "[b]ecause of the Court's Fast Track Rules[,] the striking of the current trial date and entry of an order staying this action for a period of time is necessary for the accomplishing of these ends." Again nothing in the application suggests that the parties intended the stay would extend the five-year period under section 583.310. (Compare *Knight v. Pacific Gas & Elec. Co.* (1960) 178 Cal.App.2d 923, 926-927, 930-933 [without language regarding five-year period, stipulations to continuances did not estop defendant from seeking dismissal for delay] with *City of Los Angeles v. Superior Court* (1921) 185 Cal. 405, 408-411 [parties expressly stipulated that an agreed-upon continuance of one year would not count against the five-year period].)

Gaines relies on *Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431 and *Woley v. Turkus* (1958) 51 Cal.2d 402, but those cases are distinguishable. In *Tresway*, the plaintiff served a summons on the defendant within three years of filing the complaint. The defendant requested an extension of time beyond the three-year period to answer. Rather than answer, the defendant moved to quash service of summons and to dismiss for nontimely service under former section 581a. (*Tresway*, at p. 434.) *Tresway* held the defendant was estopped from invoking the dismissal statute because its request for an extension had "effectively prevented plaintiff from discovering the defect in service until after the statutory period had run." (*Id*. at p. 433; see *id*. at pp. 441-442.) In *Woley*, the plaintiff, in

18

the fifth year of litigation, filed a motion to advance the case for trial, citing former section 583. (*Woley*, at p. 404.) The defendant requested a continuance and the parties entered a stipulation to continue the plaintiff's motion for summary judgment and the trial " 'beyond [the] five year period . . . .' " (*Id*. at p. 405.) The defendant subsequently moved to dismiss the action based on the plaintiff's failure to bring the case to trial within five years. The court found the defendant's continuance request, which expressly acknowledged the five-year deadline, estopped it from subsequently seeking dismissal for failure to prosecute. (*Id*. at pp. 407-409.) Here, by contrast, the stay in question ended well before the five-year period expired. Nor was there a mention of that period in either the parties' correspondence or the prepared order. No basis for estoppel appears on this record.

C. *Impossibility, Impracticability, or Futility*

A circumstance that does not qualify for automatic tolling under section 583.340(b) may nonetheless be excludable from the five-year period if the circumstance makes it "impossible, impracticable, or futile" to bring the action to trial. (§ 583.340(c); accord, *Bruns, supra,* 51 Cal.4th at p. 726.) Gaines invokes this provision. In deciding whether these exceptions are met, the court must consider " 'all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' " (*Bruns*, at p. 730, quoting *Moran v. Superior Court* (1983) 35 Cal.3d 229, 238.)

"The question of impossibility, impracticability, or futility is best resolved by the trial court, which 'is in the most advantageous position to evaluate these diverse factual matters in the first instance.' [Citation.] The plaintiff bears the

19

burden of proving that the circumstances warrant application of the . . . exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion. [Citations.]" (*Bruns, supra*, 51 Cal.4th at p. 731.) Under that standard, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)[8]

The statute refers to excluding "the time during which . . . [b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340(c).) The Law Revision Commission comment to section 583.340 states: "Under Section 583.340 the time within which an action must be brought to trial is tolled for the period of the excuse, regardless whether a reasonable time remained at the end of the period of the excuse to bring the action to trial. This overrules cases such as *State of California v. Superior Court*, 98 Cal.App.3d 643 . . . (1979), and *Brown v. Superior Court*, 62 Cal.App.3d 197 . . . (1976)." (17 Cal. Law Revision Com. Rep., *supra*, at p. 936.) Thus, a condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year deadline to be excluded; it will be excluded even if the plaintiff has a

---

**8** Gaines argues that the abuse of discretion standard is too amorphous to allow for meaningful appellate review. The standard, however, has long been applied in this context. (*Raggio v. Southern Pacific Co.* (1919) 181 Cal. 472; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 590-591 & fn. 9; *Sanchez v. City of Los Angeles*, *supra*, 109 Cal.App.4th at p. 1271; *Hughes v. Kimble* (1992) 5 Cal.App.4th 59, 71; cf. *Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 555 [trial court is in the best position to evaluate impracticability in the first instance].) We recently affirmed its application in *Bruns, supra*, 51 Cal.4th at page 731. Gaines provides no persuasive justification to revisit this settled rule.

20

reasonable time remaining after the period to bring the case to trial. (*Sierra Nevada*, *supra*, 217 Cal.App.3d at p. 471.)

But what is meant by establishing a condition of impossibility, impracticability, or futility in the first instance? The question depends on both the timing and nature of the interference. It is well established that " ' "[e]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation." [Citation.]' " (*Bruns*, *supra*, 51 Cal.4th at p. 731, quoting *Sierra Nevada, supra,* 217 Cal.App.3d at p. 472.) " 'Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions.' " (*Bruns*, at p. 731, quoting *Baccus v. Superior Court* (1989) 207 Cal.App.3d 1526, 1532; see *Bruns*, at p. 732; accord, *Crown Coach Corp. v. Superior Court* (1972) 8 Cal.3d 540, 548; *J. C. Penney*, *supra*, 52 Cal.2d at p. 670.) This rule reflects the Legislature's understanding that a reasonably diligent plaintiff should be able to bring the case to trial within the relatively lengthy period of five years notwithstanding such ordinary delays. (See § 583.130 ["a plaintiff shall proceed with reasonable diligence in the prosecution of an action"].) To hold otherwise would allow plaintiffs to litigate piecemeal every period, no matter how short, in which it was literally impracticable to try the case, thus rendering the statute "utterly indeterminate, subjective, and unadministerable." (*Sierra Nevada*, at p. 472.)

Here, for example, when the 120-day stay was entered on April 3, 2008, the scheduled trial date was five months out, beyond the period of the stay. Aurora, a recently added defendant, had not made an appearance, answered the amended complaint, or conducted discovery, and Countrywide anticipated filing a motion for summary judgment. It would thus be illusory to ask if it was impracticable for

21

Gaines *to try the case* during the period of the stay because the posture of the case would not have allowed for such a result. Rather, in these types of circumstances, courts have focused on the extent to which the conditions interfered with the plaintiff's ability to "mov[e] the case to trial" during the relevant period. (*De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 371; accord, *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 335 (*Tamburina*).)

Additionally, when the delay involves the time necessary for the parties to conduct ordinary incidents of proceedings leading up to the trial, the interference must deprive the plaintiff of a " 'substantial portion' of the five-year period for prosecuting the lawsuit" in order to qualify as a circumstance of impracticability. (*Tamburina*, *supra*, 147 Cal.App.4th at p. 335, quoting *Sierra Nevada, supra*, 217 Cal.App.3d at p. 473; see *Tamburina*, at pp. 333-334.) This is because ordinary delays, even ones beyond the plaintiff's control, are already accounted for in the five-year period. In *Tamburina,* for example, the parties' stipulations established that the plaintiff's counsel suffered an unusually lengthy illness which deprived Tamburina of a substantial portion of the five-year period (424 days) to prepare for trial. (*Tamburina*, at pp. 335-336; but see *Sierra Nevada,* at p. 472 [generally, counsel's routine illness is treated in the same manner as the usual and ordinary proceedings attendant to moving the case to trial].) Here, the delay was occasioned by the parties' agreement to participate in mediation; the need for Aurora to make an appearance and to conduct discovery; and the need for Aurora and Countrywide to file certain defensive pleadings. These are ordinary steps in the prosecution of the action. It was therefore necessary for Gaines to demonstrate that the delay had a significant enough impact on the litigation to elevate it from an ordinary circumstance to a circumstance of impracticability. This

22

determination requires a fact-specific inquiry in light of all of the circumstances in the case. (*Bruns, supra*, 51 Cal.4th at pp. 730-731.)

On this record, the trial court was within its discretion to conclude that the time attributable to the partial stay did not qualify for tolling under section 583.340(c). The parties participated in mediation during that time, which was a meaningful attempt to move the litigation forward to resolution. Shortly after the mediation and during the stay period, Gaines reached a settlement with United Mortgage Company and filed a request to dismiss that defendant. Other named defendants were relieved of certain filing deadlines, but not for an inordinately long period. And nothing prevented Gaines from conducting her own trial preparation during this time. Indeed, Gaines announced ready for trial against all named defendants in August 2009, three years into the litigation. Nothing about these circumstances elevated an ordinary delay agreed to by the parties into an extraordinary one.

Additionally, case law both predating and postdating the 1984 statutory revision has long held that "[f]or the tolling provision of section 583.340(c) to apply, there must be 'a period of impossibility, impracticability or futility, *over which plaintiff had no control*,' " because the statute is designed to prevent *avoidable* delay. (*Sanchez v. City of Los Angeles*, *supra*, 109 Cal.App.4th at p. 1273, quoting *New West Fed. Savings & Loan Assn. v. Superior Court* (1990) 223 Cal.App.3d 1145, 1155; accord, *Bruns, supra,* 51 Cal.4th at p. 731; *Christin v. Superior Court* (1937) 9 Cal.2d 526, 532; *Tamburina, supra,* 147 Cal.App.4th at p. 328.) The Law Revision Commission affirmed this understanding in its comment to section 583.340: "Subdivision (c) codifies the case law 'impossible, impractical, or futile' standard. The provisions of subdivision (c) must be interpreted liberally, consistent with the policy favoring trial on the merits. See Section 583.130 (policy statement). Contrast Section 583.240 and Comment

23

thereto (strict construction of excuse for failure to serve within prescribed time). This difference in treatment recognizes that bringing an action to trial, unlike service, may be impossible, impracticable, or futile *due to factors not reasonably within the control of the plaintiff*." (17 Cal. Law Revision Com. Rep., *supra*, at p. 936, italics added.) Our colleagues in dissent challenge this reading of the statute (dis. opn. of Kruger, J., *post*, at pp. 12-14), but long-standing case law, including our recent pronouncement in *Bruns*, confirms it. (*Bruns*, at p. 731.) Indeed, as the commission's comment demonstrates, our dissenting colleagues' emphasis on the policy in favor of trial on the merits in construing the provisions of this chapter (dis. opn. of Kruger, J., *post*, at pp. 5, 8, 15; § 583.130), derives from the very same premise.

The trial court was within its discretion to conclude that the circumstances of the partial stay were not beyond Gaines's control. Gaines voluntarily agreed to mediation upon the belief that it would "possib[ly] . . . resolv[e] all of th[e] case or at least major portions of it[,] . . . thereby simplifying and shortening the trial of any unresolved issues." Gaines also agreed to the partial stay with full understanding that it would relieve defendants of certain filing deadlines during the specified period. Gaines represented to the court that the partial stay would benefit all parties by saving attorneys' fees and costs during the mediation period.

Even after the order was entered, Gaines largely retained control over the proceedings. The purpose of mediation is to resolve disputes "in a fair, timely, appropriate, and cost-effective manner" without derailing the litigation. (§ 1775, subd. (a).) Parties participate voluntarily and may withdraw at any time. (*Jeld-Wen, supra*, 146 Cal.App.4th at p. 541; Cal. Rules of Court, rule 3.853(2).) "Even after a case has been ordered to mediation, the mediator must inform the parties that participation in mediation is completely voluntary, refrain from coercing a party to continue its participation in the mediation and respect the right of each

24

party to decide the extent of its participation or withdraw from the mediation. (Rule 3.853 . . . .) In fact, unless the parties have agreed to a binding award, any party who voluntarily enters mediation may revoke its consent and withdraw from the dispute resolution process. (Bus. & Prof. Code, § 467.7, subd. (a); *Kirschenman v. Superior Court* (1994) 30 Cal.App.4th 832, 835 . . . .)" (*Jeld-Wen*, at p. 541.) Upon the filing of a statement of nonagreement by the mediator, Gaines was entitled to request that the original trial date be reinstated, or that she receive priority for a new trial date. (§ 1775.9, subd. (b).) There is no reason to believe that the stay, entered at the parties' request, could not have been similarly vacated at their request. Indeed, the court order facilitated plaintiff's return to court by designating a trial-setting conference on July 16, 2008, during the period of the stay and two months before the originally scheduled trial date.

Gaines further argues that the trial court abused its discretion by failing to exclude the 97 days between the date the partial stay was supposed to expire and the date it was actually lifted, during which time there was a series of judicial assignments. Assuming, without deciding, that the stay did not terminate automatically, we reject plaintiff's argument with one minor exception.

By its own terms, the partial stay was to last 120 days (i.e., from April 3, 2008 to August 1, 2008). At the trial-setting conference on July 16, 2008, the parties appeared before Judge Kalin, sitting temporarily for Judge Lee, who was out of the country. Judge Kalin indicated that the case would be reassigned. On September 4, 2008 the case was reassigned to Judge Barbara Meyers, but she was peremptorily challenged on September 12, 2008. (§ 170.6.) On October 2, 2008, the case was reassigned to Judge Rex Heeseman, and a status conference was set for November 6, 2008. On November 6, 2008, Judge Heeseman lifted the stay.

We have held that delay attributable to trial court reassignment following a party's exercise of a section 170.6 peremptory challenge should be excluded.

25

(*Hartman v. Santamarina* (1982) 30 Cal.3d 762, 768.)  Here that delay amounted to 20 days (from September 12, 2008 to October 2, 2008).  That period, standing alone, does not overcome plaintiff's 82-day deficit.

As for the remaining period, the trial court was within its discretion to conclude that Gaines failed to proceed diligently.  "A plaintiff has an obligation to monitor the case in the trial court, to keep track of relevant dates, and to determine whether any filing, scheduling, or calendaring errors have occurred." (*Jordan*, *supra*, 182 Cal.App.4th at p. 1422.)  After mediation concluded, it was Gaines's duty to seek an order from the trial court lifting the stay, if necessary, and rescheduling the trial date.  (Cf. *Howard*, *supra*, 10 Cal.4th at p. 434.)  There is no evidence that Gaines attempted to do either during the 97-day period in question.  Although there were a series of judicial reassignments, Gaines appeared before Judge Kalin, sitting temporarily for Judge Lee, on July 16, 2008.  There is no reason apparent from the record why Judge Kalin could not have handled these requests.

In short, the trial court was within its discretion to find that the conduct of mediation and partial stay of proceedings were not so exceptional, extenuated, or beyond Gaines's control as to qualify as a circumstance of impossibility, impracticability, or futility under section 583.340(c).  Accordingly, the case was properly dismissed under the mandatory provisions of section 583.360.

While this conclusion brings an end to plaintiff's suit, that is what the five-year statute is designed to do.  The five-year rule is mandatory and dismissal for noncompliance is required.  (§ 583.360, subd. (b).)  The dissent protests that today's result "reward[s] plaintiff for working cooperatively with an opposing party by depriving her of her day in court." (Dis. opn. of Kruger, J., *post*, at p. 1.)  While attempts to work cooperatively are to be lauded, they do not absolve litigants from the obligation to prosecute claims within the statutory guidelines.

26

Established case law advised Gaines to seek an express stipulation from the parties that the agreed-upon postponements would extend the five-year period. (*J. C. Penney, supra,* 52 Cal.2d at p. 669.) Gaines did not do so. Our holding affords due deference to the trial court's unique ability to determine, based on all of the facts before it, that Gaines did not demonstrate a circumstance of impossibility, impracticability, or futility arising from this period. (*Bruns*, *supra*, 51 Cal.4th at p. 731.)

## III.  DISPOSITION

The judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CUÉLLAR, J.**

27

**DISSENTING OPINION BY KRUGER, J.**

Under the Code of Civil Procedure, the five-year limit for bringing an action to trial is tolled during periods when "[p]rosecution or trial of the action was stayed or enjoined" or "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile." (Code Civ. Proc., § 583.340, subds. (b), (c) (hereafter section 583.340(b) and section 583.340(c)); see *id*., § 583.310.) Plaintiff in this case agreed with one of the defendants to seek a stay of the trial court proceedings in order to permit the defendant to retain counsel and prepare and file its responsive pleading, as well as to permit the parties to attempt to settle their dispute out of court. The trial court gave its approval, striking an existing trial date and ordering that the action be stayed for a period of 120 days. The court today concludes that the 120-day period during which the action was stayed qualifies neither as a period when "[p]rosecution or trial of the action was stayed" (§ 583.340(b)) nor as a period when "[b]ringing the action to trial" was "impracticable" (§ 583.340(c)). The result is to reward plaintiff for working cooperatively with an opposing party by depriving her of her day in court. Because that result cannot be squared with either the text of section 583.340 or the statutory policy favoring resolution of cases on the merits, I respectfully dissent.

The facts relevant to the question before us are, as the majority says (maj. opn., *ante*, at p. 4), not in dispute. The history of the stay at issue in this case, however, warrants some elaboration.

In November 2006, plaintiff Fannie Marie Gaines filed a complaint against defendants A.J. Roof, Josh Tornberg, and several others, including Countrywide Home Loans, Inc. (Countrywide) and Fidelity National Title Insurance Company (Fidelity). The complaint alleged that she and her husband had been deceived into selling their home to Tornberg under threat of foreclosure. The complaint sought rescission and cancellation of the deed transferring ownership of the property. Due to various complications, however, the parties were unable to clearly identify the entity that held the title to the property pursuant to a loan taken out by Tornberg. After an extended dispute on this subject, Gaines determined that the holder of the title was Aurora Loan Services, LLC (Aurora). In January 2008, she amended her complaint to name Aurora as a defendant.

In March 2008, with its responsive pleading already overdue, Aurora entered into a written agreement with Gaines to stay the case. The agreement, dated March 20, 2008, recited that Aurora "needs additional time to retain California counsel to represent its interests in this action and to prepare and file its responsive pleading," and that "Gaines and Aurora Loan enter into this letter agreement to preserve the status quo . . . and to afford them time to explore resolution of this case . . . ." The parties agreed, among other things, "that (1) Aurora Loan shall not be required to enter an appearance, and/or answer . . . for 120 days from the date of this letter ('Stay'); (2) Gaines shall not file a request for default judgment . . . during the Stay; (3) Aurora Loan agrees to take no further steps during the Stay to foreclose the $865,000 Loan . . . ; (7) Gaines' counsel will take the necessary steps to petition the Los Angeles Superior Court and request

2

that the Court formally approve the Stay; and (8) . . . Gaines' counsel agrees to coordinate with all party defendants an in person, non-binding mediation to occur before expiration of the Stay to confidentially discuss if a global resolution can be reached between all parties . . . ."

In a letter dated March 31, 2008, all parties confirmed their agreement that "1. The Court strike the current September 22, 2008 Trial Date, set this case for a Trial Setting Conference on or after July 16, 2008 and enter its order that, except for the matters set forth below, all other litigation efforts in this case be stayed until on or after the future Trial Setting Conference; [¶] 2. All previously served and outstanding written discovery shall be responded to by the party obligated to respond in the near future and each serving party's 45 day period to move to compel further responses to that discovery shall commence on the date of the future Trial Setting Conference; [¶] 3. No other discovery shall be commenced until after the future Trial Setting Conference; [¶] 4. Gaines agrees that the Court can enter an order striking the following portions of the Fourth Amended Complaint . . . and [¶] 5. All parties participate in a global mediation of all claims in this action in the near future." The letter gave notice to the parties that Gaines would seek an ex parte order "staying until July 16, 2008 all activity in this case [except] as outlined above."

On April 3, 2008, Gaines filed an "Ex Parte Application for Order (a) Striking Existing Trial, Final Status Conference and Post Mediation Conference Dates, (b) Staying Case for 120 Days, (c) Setting a Future Trial Setting Conference Date and (d) Directing All Parties to Participate in Good Faith in a Mediation of All Claims Within the Next 90 Days." The motion asked for an order "(a) striking the current Trial Date . . . (b) staying this action for 120 days, except for responding to previously served and outstanding written discovery, (c)

3

setting a Trial Setting Conference date on or after July 16, 2008, and (d) directing all parties . . . to participate in good faith in a mediation of all claims . . . ."

The motion stated that "Aurora Loan wants to explore settlement prior to making an appearance . . . [and] an order striking the current trial date and staying this action for 120 days is needed to accomplish these goals . . . ." The memorandum of points and authorities in support of the request for a stay adds that "Defendant Countrywide Home Loans, Inc. ('Countrywide') is willing to participate in this mediation only if it does not prejudice its rights to prosecute a summary judgment . . . and as such there is a need to strike the current trial date and to stay this litigation for a period of time."

On that same day, April 3, 2008, the superior court issued the following order: "(A) The current Trial Date of September 22, 2008, the current Final Status Conference Date of September 12, 2008, and the current Post Mediation Conference Date of August 19, 2008 and Discovery Cut-Off Date are struck; [¶] (B) This case is stayed for a period of 120 days except that parties are to respond to all previously served and outstanding written discovery; [¶] (C) This case is set for a Post Mediation and Trial Setting Conference on July 16, 2008, at 8:30 a.m. in Department 33; and [¶] (D) All parties are directed to participate in good faith in a mediation of all claims in this case within the next 90 days."

Although the 120 days expired on August 1, 2008, various judicial reassignments meant that the stay was not formally lifted until November 6, 2008, when the trial court scheduled the case for a trial setting conference. In May 2012, defendant Fidelity moved to dismiss for failure to bring the action to trial within the five-year time frame required by section 583.310. If the 120-day period is excluded from the calculation of time, then defendant's motion to dismiss fails; if not, then not.

4

## II.

In Code of Civil Procedure section 583.340, the Legislature instructed that, in computing "the time within which an action must be brought," courts must exclude certain periods of time, including "the time during which" "[p]rosecution or trial of the action was stayed or enjoined" (§ 583.340(b)) and during which "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile" (§ 583.340(c)). "[T]he evident purpose" of this provision is, as one court has observed, "to exclude from the mandatory dismissal provision time periods during which the case could not be brought to trial. The absence of trial court jurisdiction to try it . . . is one reason; a court order barring the trial (by a stay or injunction) is another." (*Holland v. Dave Altman's R.V. Center* (1990) 222 Cal.App.3d 477, 482 (*Holland*).) In construing this provision, the Legislature has instructed that we are generally to prefer "the policy favoring trial or other disposition of an action on the merits" over "the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action." (Code Civ. Proc., § 583.130 (section 583.130).)

The threshold question in this case is whether all or part of the period following the trial court's order entering the stay should be excluded from the five-year time frame as a period during which "[p]rosecution or trial of the action was stayed or enjoined." (§ 583.340(b).) Giving this language its "usual and ordinary meaning," as we generally must do (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501), I would think that the answer to that question is yes: The period during which the trial court stayed the action counts as a period during which the prosecution (if not also the trial) of the action was stayed.

In reaching its contrary conclusion, the majority begins not with the plain language of the statute, but with our decision in *Bruns v. E-Commerce Exchange,*

5

*Inc.* (2011) 51 Cal.4th 717 (*Bruns*). *Bruns* concerned "whether a stay of the 'prosecution' of the action under section 583.340(b) includes a stay of specific proceedings, such as a stay of discovery, while other aspects of the action may go forward." (*Bruns*, *supra*, 51 Cal.4th at pp. 721–722.) *Bruns* answered that question in the negative, concluding — reasonably enough — that a stay of discovery or other "specific proceedings" is not the same thing as a stay of the prosecution or trial "*of the action*." (§ 583.340(b), italics added; see *Bruns*, *supra*, 51 Cal.4th at pp. 726–727.) *Bruns* went on to state, however, that although the plain language of section 583.340(b) might be read more broadly, its relationship to its neighboring provision, subdivision (c), calls for reading section 583.340(b) more restrictively, to apply "only when a stay encompasses *all* proceedings in the action." (*Bruns*, *supra*, 51 Cal.4th at p. 723.) *Bruns* explained that subdivision (b) "contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which *all* the proceedings in an action are stayed." (*Bruns*, *supra*, 51 Cal.4th at p. 726, italics added.) "Subdivision (c)," on the other hand, "gives the trial court discretion to exclude additional periods, including periods when partial stays were in place, when the court concludes that bringing the action to trial was 'impossible, impracticable, or futile.' Obviously, if a complete stay is in effect, bringing the action to trial is impossible. It makes sense for the Legislature to state a bright-line rule in this situation. The effect of a partial stay, however, can vary from stay to stay and from case to case. A partial stay might, or might not, make it 'impossible, impracticable, or futile' to bring the action to trial." (*Ibid.*)

As the court read the statute in *Bruns*, then, a "partial" stay that does not halt "all the proceedings in an action" will toll the five-year clock only if it is the sort of stay that — like a "complete" stay — makes it "impossible, impracticable,

6

or futile" to bring the action to trial under section 583.340(c).  The question thus becomes whether the stay at issue here was that sort of stay.

The stay at issue was not simply a stay of discovery or other "specific proceedings," as in *Bruns*.  It was just about the opposite:  The trial court's order struck a scheduled trial date and put a temporary halt to all judicial proceedings with respect to all parties, with the minor exception of the exchange of responses to previously served and outstanding written discovery.  (The record does not reveal whether any outstanding discovery responses were in fact exchanged.)  Labels, of course, cannot be dispositive.  But given the comprehensive scope of the order, it is not surprising that the trial court referred to "the case" — not merely certain "proceedings" — as having been stayed.  As Justice Rubin wrote in his dissenting opinion in the Court of Appeal, if this was a "partial" stay under *Bruns*, "it was barely so."

Were we writing on a blank slate, I would consider that 120-day stay to be a stay of the prosecution of the action that is excluded from the computation of the period for trial under section 583.340(b).  But even if a stay is not a "stay" under section 583.340(b) if it allows the court proceedings to continue in any respect, no matter how trivial, the time for bringing the case to trial should still have been tolled because it was impracticable to bring the action to trial during this period under section 583.340(c).  A stay of proceedings that is very nearly "complete," accompanied by the striking of a scheduled trial date, is precisely the kind of stay that one would expect to toll the five-year clock under section 583.340(c) as interpreted in *Bruns*.  The single respect in which the court proceedings were not halted — the failure to vacate existing deadlines for exchanging outstanding discovery responses — did not bring the parties meaningfully closer to bringing the case to trial.  The stay at issue in this case operated, in all relevant respects, precisely in the same manner as a "complete" stay subject to automatic tolling, and

7

the time period should have been excluded from the five-year computation for precisely the same reason: It is not "practicable" for a plaintiff to bring a case to trial during a period when the trial court has ordered otherwise. (See *Holland*, *supra*, 222 Cal.App.3d at p. 484.)

If there were any doubt on the subject, it ought to be dispelled by the rule of construction prescribed in section 583.130. That provision tells us that, although it is a "policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action . . . the policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter." (*Ibid.*)

In *Bruns*, we explained that our restrictive interpretation of the term "stay" in section 583.340(b) is consistent with this policy favoring trial because, even if the bright-line exclusion of subdivision (b) is unavailable, a plaintiff may always turn to "the more flexible subdivision (c) of the provision, which permits trial on the merits when appropriate in situations not governed by subdivision (b)." (*Bruns*, *supra*, 51 Cal.4th at p. 729.) If *Bruns* is to be taken at its word, then a stay that just misses the mark under subdivision (b) ought to pass with flying colors under subdivision (c). The alternative — to give a restrictive reading to *both* prongs of the computation statute — would hardly comport with either the Legislature's apparent intent in enacting the exclusion for stay periods in section 583.340(b) or its instruction to err on the side of interpreting the statute to allow a plaintiff her day in court.

### III.

The majority gives three reasons in support of its conclusion that the stay period at issue in this case properly counted against plaintiff's five-year time limit. First, the majority emphasizes that the stay order contemplated that the parties

8

would use the 120-day period to, among other things, attempt to resolve their dispute out of court, and, toward that end, directed them to mediate in good faith. Mediation, the court reasons, represents the continued prosecution of the action because "it is a means by which the parties may reach a settlement of the suit." (Maj. opn., *ante*, at p. 12.) The majority thus cites the mediation both as a reason that the stay was "partial," rather than "complete," and a reason that the stay order did not render it "impracticable" to bring the case to trial during the relevant time period. (Maj. opn., *ante*, at pp. 11–13, 22.)

In my view, this argument rests on a flawed premise. Mediation is indeed a means by which parties might settle a lawsuit, as are more informal settlement discussions. But while mediation, like other settlement discussions, may obviate the need for continued pursuit of litigation, it is not part of the litigation itself. Mediation is, rather, " 'an *alternative* to litigation . . . [that] provides a simple, quick, and economical means of resolving disputes.' " (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 578, italics added; see also Code Civ. Proc., § 1775, subd. (d) [describing mediation as an "alternative[] to trial"]; *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 132–133 [noting that mediation can resolve "disputes by means short of litigation" and describing mediation as an "alternative means of resolution"].)[1] The majority's contrary notion seems particularly out of place in

[1] Section 1775.7 of the Code of Civil Procedure, on which the majority relies, provides no indication of any legislative "intent to treat mediation as part of the prosecution of the action." (Maj. opn., *ante*, at p. 15.) It instead reflects a recognition that, in the absence of a court-ordered stay, mediation has no necessary impact on the continued prosecution of the action and thus ordinarily does not warrant tolling, except insofar as the mediation remains pending after four years and six months. This statute has no particular bearing on the question here, which concerns whether it was "practicable" for plaintiff to bring the case to trial during the period when the case had been stayed by the trial court.

9

the context of interpreting a statute governing the time to bring "[*a*]*n action . . . to trial*." (Code Civ. Proc., § 583.310, italics added.) Given the Legislature's overarching concern with the exercise of "reasonable diligence in the prosecution of an action" — to the end of bringing the action to "trial or other disposition . . . on the merits" (*id.*, § 583.130) — there is little reason to suppose that, by using the phrase "[p]rosecution . . . of the action" (§ 583.340(b)), the Legislature meant to refer to steps taken to *avoid* bringing the action to trial or otherwise resolving the action on the merits through the judicial process.

In any event, if the prospect that the parties would use the stay period to attempt to settle their differences out of court sufficed to disqualify the stay under section 583.340, then it is hard to imagine what kind of court-ordered stay *would* qualify for tolling under the statute. The logical consequence of this view would be that even a stay order that halted court proceedings in every conceivable respect would not stop the five-year clock if it permitted the parties to discuss settlement out of court. I am not aware of any court that has ever *not* permitted parties to attempt to settle, nor am I aware of any stay order that has been interpreted to have such an effect. It is unlikely that this is what the Legislature intended when it drafted section 583.340.

Perhaps by its italicized reference to the court order "*directing* [*the parties*] *to mediate*" (maj. opn., *ante*, at p. 12), the majority means to suggest that there is something special about the court's order to "participate in good faith in a mediation of all claims" that specially disqualifies the stay under section 583.340. If so, it is not clear what, precisely, that something might be. The majority asserts that by its order, the court "incorporat[ed] the procedure and rules that govern mediation into the prosecution of the case." (Maj. opn., *ante*, at p. 13.) How this

10

might have occurred, the majority does not explain.**2** Orders to participate in mediation or other settlement negotiations in good faith are common. Such orders are not generally thought to transform such settlement discussions into a kind of adjunct judicial forum, with the mediator acting as a kind of deputized bench officer. Even when backed by a court's order to participate in good faith, mediation remains an *alternative* to litigating the action to an ultimate conclusion on the merits. It is not part of the litigation itself.

Second, the majority reasons that the stay "did not qualify for tolling under section 583.340(c)" because, while the stay was in effect, "nothing prevented Gaines from conducting her own trial preparation during this time." (Maj. opn., *ante*, at p. 23.) By this reasoning, the majority would all but read section 583.340(b) out of the statute. Under any stay order — even a "complete" stay order within the meaning of *Bruns* — the parties are always free to conduct their own trial preparation. True, depending on the circumstances that gave rise to the stay, trial preparation may seem, as a practical matter, inefficient or premature. But the possibility that the parties to a stayed action might make profitable use of

---

**2** The sole explanation the majority provides is a parenthetical citation of the statutory rules governing cases submitted to mediation under the civil action mediation program created by Code of Civil Procedure section 1775 et seq. Defendants themselves, however, appear to have conceded these provisions "are not directly applicable to this case" because the case was not submitted to mediation pursuant to the civil action mediation program. It is, moreover, unclear whether section 1775 et seq. *could* have any application to private mediation, as this mediation appears to have been. (See *Castillo v. DHL Express (USA)* (2015) 243 Cal.App.4th 1186, 1197 [interpreting section 1775 et seq. to apply "only to court-annexed mediation programs" and not private mediation].) No party has asked us to resolve that question in this case.

In any event, even if Code of Civil Procedure section 1775 et seq. did apply, nothing in the statutory scheme purports to "incorporate[e] the procedure and rules that govern mediation into the prosecution of the case." (Maj. opn., *ante*, at p. 13.)

11

the stay period does not render it any less a "stay," nor does it make it any more "practicable" to bring the case to trial while the stay remains in effect. To hold otherwise gives insufficient weight to the Legislature's determination that a court-ordered stay of the prosecution or trial of the action constitutes a circumstance of impracticability that warrants tolling the five-year clock.

Finally, the majority asserts that " '[f]or the tolling provision of section 583.340(c) to apply, there must be a "period of impossibility, impracticability or futility, *over which plaintiff had no control . . . .*" ' " (Maj. opn., *ante*, at p. 23.) The majority concludes "that the circumstances of the partial stay were not beyond Gaines's control" because Gaines voluntarily agreed both to mediation and to the stay, and could have sought to have the stay vacated before it expired. (Maj. opn., *ante*, at p. 24.)

In my view, this reasoning, too, is fundamentally flawed. Begin with the text: The words "over which plaintiff had no control" do not appear anywhere in section 583.340 — although similar language *does* appear in the parallel provision governing the calculation of the three-year period during which service must be made. (See Code Civ. Proc., § 583.240 (section 583.240) ["In computing the time within which service must be made pursuant to this article, there shall be excluded the time during which . . . : [¶] . . . [¶] (d) Service, for any other reason, was impossible impracticable, or futile *due to causes beyond the plaintiff's control*." (Italics added.)].) As a general rule, when a legislature " 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion.' " (*Russello v. United States* (1983) 464 U.S. 16, 23; see also, e.g., *People v. Trevino* (2001) 26 Cal.4th 237, 242 ["When the Legislature

12

uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."].)  Applying that rule in *Bruns*, we refused to "engraft onto subdivision (b) an exception that the Legislature explicitly included in section 583.240 but did *not* include in section 583.340(b)."  (*Bruns*, *supra*, 51 Cal.4th at p. 727.)  The same result ought to obtain here.

The difference in the wording of the two provisions reflects a basic difference in their functions.  The primary purpose of the dismissal statutes is to ensure that plaintiffs prosecute their cases with "reasonable diligence." (§ 583.130.)  From that standpoint, there are significant differences between the timing of service and the timing of bringing a case to trial.  As the Law Review Commission comment to section 583.240 observes, that provision is designed to advance "one aspect of the policy announced in Section 583.130 — plaintiff must exercise diligence — and recognizes that service, unlike bringing to trial, is ordinarily within the control of the plaintiff."  (Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 933.)  In other words, because the timing of service generally lies in the plaintiff's sole discretion, a plaintiff who effects service beyond the prescribed time limits does not act diligently unless the delay results from some circumstance beyond his or her control.

But the timing of trial, unlike the timing of service, does not rest in the plaintiff's sole discretion, and therefore may be affected by "factors *not reasonably*" within the plaintiff's sole control.  (*Ibid.*, italics added.)  As the Legislature itself recognized, once the wheels of judicial process have been set in motion, bringing the case to trial requires "all parties [to] cooperate."  (§ 583.130.) Here, a primary reason for the stay was to permit Aurora, which had just been added as a defendant, to retain California counsel and prepare and file its

13

responsive pleading, as well as to accommodate Aurora's desire to explore settlement before making an appearance.  And the parties did not simply agree among themselves to delay the continuation of court proceedings; they sought and received the trial court's approval.  Once the court entered the stay order, the order had the same force and effect as any other stay order, including one entered over a party's objection.

It is certainly true that the decision to agree to her opposing party's request was not beyond Gaines's control in any absolute sense; she could have refused.  (Of course, had she done so, there is no guarantee her objection would have carried the day; the trial court might well have granted the stay regardless.)  But the decision to accommodate an opposing party does not reflect a lack of reasonable diligence.  It reflects a willingness to cooperate.  To fault Gaines for agreeing to seek the stay — or for failing to seek to lift the stay before its expiration — simply creates unfortunate incentives for the conduct of pretrial litigation, without meaningfully advancing the policies underlying the dismissal statute.

## IV.

The majority points out that the parties could have extended the five-year time limit by means of a written stipulation or an oral agreement in open court.  (Code Civ. Proc., § 583.330; maj. opn., *ante*, at p. 10.)  That is true, and parties who find themselves in a similar position in the future would be well advised to avail themselves of this option.  It is, however, cold comfort to Gaines — who, before the court's opinion today, would have had no reason to believe that any stipulated extension would be necessary.  Section 583.330 *permits* the parties to extend the five-year period without the consent or participation of the trial court.  But section 583.340 *commands* courts to exclude periods during which the "[p]rosecution or trial of the action was stayed" or during which "[b]ringing the

14

action to trial" was otherwise "impracticable."  Under a straightforward reading of the statute, the 120-day-long stay in this case ought to qualify as such a period.

The "tolling provisions of Code of Civil Procedure section 583.340 must be liberally construed consistent with the policy favoring trial on the merits." (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 693.)  The majority opinion fails to do so.  It instead reaches the textually implausible conclusion that a trial court order that strikes the trial date and stays the case does not toll the five-year period under section 583.340, thereby ensuring that no court will decide the merits of plaintiff's claim.  I respectfully dissent.


          **KRUGER, J.**

**I CONCUR:**

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Gaines v. Fidelity National Title Insurance Company

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 222 Cal.App.4th 25
**Rehearing Granted**

_____

**Opinion No.**S215990
**Date Filed:** February 25, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Rolf M. Treu

_____

**Counsel:**

Ivie, McNeill & Wyatt, W. Keith Wyatt and Antonio K. Kizzie for Plaintiff and Appellant.

Fidelity National Law Group, Kevin R. Broersma and Jordan Trachtenberg for Defendants and Respondents Fidelity National Title Insurance Company and Bobbie Jo Rybicki.

Knapp, Petersen & Clarke, Garcia Legal, Steven Ray Garcia and Alexander Levy for Defendants and Respondents Lehman Brothers Holdings, Inc., and Aurora Loan Services, LLC.

No appearance for Defendants and Respondents Joshua Tornberg, Craig Johnson, Ray Management Group, Inc., and A.J. Roop.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

W. Keith Wyatt
Ivie, McNeill & Wyatt
444 South Flower Street, Suite 1800
Los Angeles, CA  90071
(213) 489-0028

Antonio K. Kizzie
Ivie, McNeill & Wyatt
444 South Flower Street, Suite 1800
Los Angeles, CA  90071
(213) 489-0028

Kevin R. Broersma
Fidelity National Law Group
915 Wilshire Boulevard, Suite 2100
Los Angeles, CA  90017
(213) 438-7207

Steven Ray Garcia
Garcia Legal
234 East Colorado Boulevard, 8th Floor
Pasadena, CA  91101
(626) 577-7500